743 So.2d 1036 (1999)
GULFPORT PILOTS ASSOCIATION, INC., Appellant,
v.
Michael KOPSZYWA, Appellee.
No. 97-CA-01041-COA.
Court of Appeals of Mississippi.
May 18, 1999.
Roland F. Samson, III, Gulfport, Attorney for Appellant.
George W. Byrne, Jr., Attorney for Appellee.
BEFORE BRIDGES, C.J., COLEMAN, IRVING, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY
¶ 1. On December 8, 1995, Michael Kopszywa initiated a lawsuit against Gulfport Pilots Association, Inc. from an incident which occurred on March 1, 1995, while Kopszywa was on the Gulfport Pilot *1037 II. Upon completion of discovery, the case was set for trial on March 24, 1997. However, on the very day the case was set for trial, the parties elected to mediate the case. By letter, the parties confirmed their respective understanding of the terms and conditions of the agreement to settle. On May 1, 1997, Kopszywa filed a motion to enforce the settlement. On May 15, 1997, Gulfport Pilots filed a response to Kopszywa's motion to enforce. On May 16, 1997, a hearing took place and the court entered judgment against Gulfport Pilots in the agreed upon amount of $200,000 plus interest, plus medical bills outstanding. No where is there a denial that this was the amount of the settlement agreement. Furthermore, the judgment provided that Gulfport Pilots was to pay maintenance to Kopszywa from April 25, 1997, at a rate of $105 per week until the judgment was satisfied in full.
¶ 2. On May 25, 1997, Gulfport Pilots filed a motion to vacate the judgment based on objection to payments beginning April 25, 1997 in the amount of maintenance. By order dated July 23, 1997, the trial judge denied Gulfport Pilots's motion. From the judgment entered on May 22, 1997, and the order denying the motion to vacate the judgment, Gulfport Pilots appeals.

FACTS
¶ 3. Kopszywa was employed by Gulfport Pilots as a captain. He injured his left shoulder while attempting to repair the starter which had fallen from its mounting while on the Gulfport Pilot II. Following the injury, Kopszywa initiated an action against Gulfport Pilots based on the Jones Act.
¶ 4. Paramount, Gulfport Pilots's insurer, began maintenance payments. As a trial on the action loomed closer, both parties agreed on the possibility of mediation. On March 25, 1997, counsel for Gulfport Pilots wrote Kopszywa's attorney to confirm the settlement for $200,000 plus past medical to settle any and all claims in this action. The settlement was for any future claims, inclusive of maintenance and cure, and was contingent only on Kopszywa's executing a full and final release of Gulfport Pilots' liability. Kopszywa's attorney requested that the settlement check be sent within ten days of March 25, 1997. Gulfport Pilots's counselor noted that he thought he could get the settlement check in ten days.
¶ 5. Graham Haywood, on behalf of Shaw Internationalthe third party administrator for Paramountwrote Michael Hepburn, a representative of Paramount, by letter dated April 17, 1997, inquiring in to the situation concerning the settlement.
¶ 6. By letter dated April 21, 1997, Kopszywa's attorney wrote Mr. Hepburn and stated that "this claim was settled on March 21, 1997." On April 30, 1997, the attorney for Gulfport Pilots wrote Stanley Fournier, one of the Gulfport Pilots, stating that he had not received any indication from the insurer as to when they would receive the check and this information had been passed along to Kopszywa's attorney. The letter states that "As you know, we settled Mr. Kopszywa's claim for $200,000 on March 25, 1997."
¶ 7. By faxed letter dated May 1, 1997, Kopszywa's attorney wrote Gulfport Pilots's attorney to confirm his understanding of the settlement terms which he thought to be $200,000 plus payment of all medical expenses related to the accident which were outstanding as of the date of the settlement, March 25, 1997. On May 1, 1997, Kopszywa's attorney filed a motion to enforce the settlement agreement. At the time, Paramount had failed to tender any settlement money.
¶ 8. On May 2, 1997, the attorney for Gulfport Pilots wrote Kopszywa's attorney. He said that he had made inquiries with the insurer, but at the time he did not know when the settlement check would be received, because during this period of time, Paramount was experiencing financial *1038 problems and would not be able to honor the offer it had authorized.

ISSUES PRESENTED

I. WHETHER THE TRIAL COURT ERRED IN ENFORCING A SETTLEMENT AND ENTERING JUDGMENT AGAINST GULFPORT PILOTS WHEN THERE WAS NO MEETING OF THE MINDS BETWEEN THE PARTIES AS TO THE AGREEMENT TO SETTLE.
¶ 9. The thrust of Gulfport Pilots's first argument is based on the premise that since no meeting of the minds took place, there was no settlement agreed to by the respective parties, and as such, no agreement had been breached. Viverette v. State Highway Comm', 656 So.2d 102, 103 (Miss.1995) (citing Thomas v. Bailey, 375 So.2d 1049, 1052 (Miss.1979) (stating that it is elementary that in order for there to be a settlement there must be a meeting of the minds.)) Turning toward case law, Gulfport Pilots states that the burden is on the party claiming the benefit of the settlement to demonstrate by a preponderance of the evidence that there was a meeting of the minds. Viverette, 656 So.2d at 103.
¶ 10. We begin our analysis by stating that a meeting of the minds did take place and find it simply a waste of judicial resources to opine on the obvious. However, we do note that there is ample evidence to conclude that a meeting of the minds did take place. In fact, Gulfport Pilots's attorney stated by letter dated March 25, 1997 to Kopszywa's attorney the following:
This will confirm that the Plaintiff has agreed to settle any and all claims in this action both past, present and future (excluding the past cure claim) for $200,000. Again, this settlement will include any future claims that Plaintiff may have, including maintenance and cure. This offer is contingent on the Plaintiff and Ms. Kopszywa executing a Full and Final Release in favor of the Gulfport Pilots Association and its insurer. The Gulfport Pilots Association will remain responsible for paying and satisfying all outstanding medical bills.
As stated in a letter dated April 21, 1997, by Kopszywa's attorney to Mr. Hepburn of Paramount:
As you are aware, this claim was settled on March 21, 1997. At that time, defense counsel advised me and my client that he did not anticipate any reason why the settlement check could not be available in 10 days. Since, with the conclusion of the settlement, Mr. Kopszywa's maintenance and cure payments were discontinued, this time frame was acceptable.
Gulfport Pilots's attorney recognized that Kopszywa expected funds from the settlement and went so far as to inquire about when he should expect a check which he planned to forward to Kopszywa. On April 30, 1997, Gulfport Pilots's attorney wrote Stanley Fournier the following:
As you know, we settled Mr. Kopszywa's claim for $200,000 on March 25, 1997. Since that time, we have been trying to determine when the settlement funds will be received from the insurer.
This collection of evidence certainly does not lend itself to the fact that no meeting of the minds existed. Thus, we focus our opinion on the issue of whether it was error on the part of the trial judge to require Gulfport Pilots to pay future maintenance to Kopszywa until the settlement was paid in full.

II. WHETHER ASSUMING THERE WAS A MEETING OF THE MINDS NECESSARY FOR AN ENFORCABLE SETTLEMENT, THE TRIAL COURT ERRED IN ENTERING A JUDGMENT REQUIRING GULFPORT PILOTS ASSOCIATION, INC. TO PAY FUTURE MAINTENANCE TO THE PLAINTIFF.
¶ 11. Gulfport Pilots argues that the trial judge committed error when he altered the terms of the agreement. *1039 Kopszywa states that the terms of the settlement were clear and unambiguous and that the requirement that Gulfport Pilots pay maintenance was nothing more than a starting point for payment of the settlement proceeds. He states in his brief, "plaintiff would receive the sum of $200,000 to settle all claims in his lawsuit which included claims for both personal injury and maintenance and cure. In addition, defendant would pay all outstanding medical bills of approximately $15,000."
¶ 12. At the time of the settlement in March 1997, maintenance had already been terminated. The termination of maintenance was apparently premised upon a settlement of the case in a timely manner. As stated in a letter dated April 21, 1997, by Kopszywa's attorney to Mr. Hepburn:
As you are aware, this claim was settled on March 21, 1997. At that time, defense counsel advised me and my client that he did not anticipate any reason why the settlement check could not be available in 10 days. Since, with the conclusion of the settlement, Mr. Kopszywa's maintenance and cure payments were discontinued, this time frame was acceptable.
It was only when Gulfport Pilots failed to honor the settlement agreement that Kopszywa sought a court order requiring them to do so and to recommence payment of maintenance until the agreed upon settlement funds were paid. This request for the trial court to enter an award for maintenance did not alter the terms of the settlement, but was sought as a catalyst to effectuate payment of Gulfport Pilots's obligation. Essentially, Gulfport Pilots had the best of both worldsthey were not paying Kopszywa's maintenance because maintenance was stopped when the parties agreed to the settlement, nor were they paying the settlement funds, both of which courses of action violated the settlement and left Kopszywa financially destitute. As Kopszywa's attorney noted by letter dated April 25, 1997:
As Mr. Kopszywa's maintenance payments were terminated with the settlement, and as he now has no income, it is important and critical that we receive the settlement funds at the earliest possible date.
Simply stated, settlement occurred. The requirement that maintenance be paid is not a penalty for failing to meet the obligation agreed to by Gulfport Pilots. It is a mandated schedule of payments until the full settlement amount agreed upon is paid. The amount of the weekly maintenance payments will be credited against the $200,000 figure. Having stated such, we find this citation of error proposed by Gulfport Pilots to be without merit.

STATUTORY DAMAGES
¶ 13. Since 1857, Mississippi has imposed a mandatory penalty on parties who unsuccessfully appeal to the Mississippi Supreme Court. Miss. Rev.Code Ch. 63, Art 12 (1857). Furthermore, by statute, appellants are required to be charged with fifteen percent of the judgment if it is (1) a final judgment (2) of the type specified by the statute is (3) affirmed unconditionally (4) by the Mississippi Supreme Court. Miss.Code Ann. § 11-3-23 (Rev.1991). The statute expresses a bona fide interest in providing a measure of compensation for the successful appellee who has endured the rigors of successful appellate litigation. Walters v. Inexco Oil Co., 440 So.2d 268, 274-75 (Miss.1983).
¶ 14. Based on the terms and conditions of the agreed settlement, the trial court entered a judgment against Gulfport Pilots in the amount of $200,000 plus interest, outstanding medical bills, and maintenance to him until the judgment was satisfied. Despite an agreed settlement and court order against Gulfport Pilots, they refused to satisfy the judgment. The public policy supporting the statutory penalty certainly justifies its application in this case. The statute is designed to discourage frivolous appeals and to provide compensation for the successful appellee. The statute directs *1040 the imposition of penalties based upon the judgment or decree affirmed if it is monetary. Therefore, we impose a statutory penalty of 15% upon such sum.

CONCLUSION
¶ 15. Under the Jones Act the employer is liable for injuries suffered by employees. When the employer and employee reach a settlement it becomes enforceable against the parties to the lawsuit. How the employer intends to satisfy the settlement amount is immaterial to the employee's claim under the settlement. The court's order requiring that minimum payments toward satisfying the settlement begin immediately did not alter the terms of the settlement. The cases cited in the dissent from other jurisdictions not only are dissimilar as to the facts and more than forty years old, but were settled without knowledge nor participation of the insured. In this case, Kopszywa agreed to mediation, sparing the insured the expense and trauma of a trial. The insured confirmed the settlement in writing. Gulfport Pilots's present position is indefensible. The judgment was against the negligent party, Gulfport Pilots. How they plan to pay the judgment is not at issue here.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
KING, P.J., BRIDGES, DIAZ, IRVING, LEE, AND THOMAS, JJ., CONCUR.
McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., AND COLEMAN, J.
McMILLIN, C.J., DISSENTING:
¶ 17. I respectfully dissent. There is no basis, on this record, to charge Gulfport Pilots with personal liability for a settlement negotiated by its insurer. Whether the insured is to be bound by its insurer's negotiations is a fact question, not a question of law. This suggests that the trial court acted precipitously in entering judgment against Gulfport Pilots without an evidentiary hearing to determine the settlement terms negotiated by the attorneys. (Because there has been no evidentiary hearing, it is somewhat difficult to reconstruct the pertinent facts. What follows is a collection of information garnered from the pleadings and from certain representations made by the attorneys during argument on the motion to enforce the settlement.)
¶ 18. Kopszywa sued Gulfport Pilots, his employer, under the Jones Act for injuries he received during the course of his employment. Gulfport Pilots had insurance coverage for Jones Act claims with Paramount Reinsurance Limited (hereafter "Paramount"). As is customary in such circumstances, Paramount undertook the defense of Kopszywa's claim and retained an attorney to handle the case. As a part of his authorized activity in defending the suit, defense counsel was given some limited measure of authority by Paramount to settle Kopszywa's claim before trial. After a day of formal mediation, defense counsel and Kopszywa's attorney reached a settlement, the principal provision of which was that Kopszywa was to receive approximately $215,000. There was no formal settlement document executed. Rather, the attorneys reached a verbal understanding of the amount to be paid. According to Kopszywa's attorney, they also agreed on a deadline of ten days for payment of the settlement amount. Defense counsel disputes this claim and asserts that he only committed to use his best effort to obtain the funds from Gulfport Pilot's insurer within that time. This rather bare-bones outline of a settlement was fleshed out to some degree over the next few weeks in several pieces of correspondence. Even those letters, however, leave a large measure of uncertainty as to the *1041 vital term of the settlement on which this case turns, i.e., whether Gulfport Pilots committed to be personally bound by the terms of the settlement negotiated by its insurer.
¶ 19. There is little doubt that the attorneys understood that Paramount was to be the source of the funds, and not Gulfport Pilots directly. In discussing when the settlement funds might be available, they dealt with the fact that the proceeds were "coming from overseas." (Gulfport Pilots was domiciled in Mississippi, but Paramount's address was in Nassau, The Bahamas.)
¶ 20. The agreed-upon proceeds were never forwarded by Paramount despite the best efforts of all concerned. The record suggests that Paramount may have been experiencing financial difficulties. Whatever the cause of Paramount's failure to forward the funds, Kopszywa ultimately filed a motion in the Jones Act proceeding seeking to enforce the settlement directly against Gulfport Pilots. The trial court entered judgment against Gulfport Pilots for the full amount of the settlement together with interest from the date of the settlement.
¶ 21. Gulfport Pilots argues that this judgment was improperly entered for several reasons, one of which I would find meritorious. Gulfport Pilots says that the parties understood that the source of the settlement proceeds was to be Paramount under its obligation as insurer of Gulfport Pilots and that this was a term of the settlement. Therefore, Gulfport Pilots argues, there was no "meeting of the minds" on the proposition that Gulfport Pilots was assuming personal liability for the paying the settlement.
¶ 22. Other jurisdictions considering a similar question have reached results consistent with the position taken by Gulfport Pilots. There seems to be a widely-held view that an insured defendant is not necessarily bound by a settlement negotiated by an attorney acting under authority from the insurer. In Haluka v. Baker, the Ohio Court of Appeals considered a case involving a personal injury claim arising out of a motor vehicle accident brought against an insured defendant. Haluka v. Baker, 66 Ohio App. 308, 34 N.E.2d 68 (1941). Defense counsel, retained by the defendant's insurance company, agreed to a settlement in the amount of $250 a few days prior to trial. Before the settlement was paid, the Ohio Superintendent of Insurance seized the insurance company's assets and put it into liquidation. The plaintiff had dismissed his suit in anticipation of receiving the settlement check before learning that the defendant's insurer was insolvent. Rather than re-filing the tort suit, the plaintiff filed suit against the defendant driver seeking to obtain judicial enforcement of the terms of the settlement. The lower court refused to enforce the settlement directly against the formerly insured driver. The appellate court affirmed and said:
Where a liability insurer, by its policy contract, reserves to itself the right to defend, in the name of the insured, actions to recover for personal injuries or property damages, to employ counsel of its own choosing, to litigate or settle as it sees fit, and the insured is, by the contract, not permitted to interfere with the insurer's handling of the litigation or settlement, but is required to assist and co-operate with the insurer in the investigation, preparation and presentation of the defense, such insurer in settling such litigation without the express consent of the insured, or without his subsequent ratification of the insurer's handling thereof, acts in its own behalf, and not as the agent of the insured. Under such circumstances, the insured is not personally bound by the agreement of settlement made by the insurer, unless it was expressly authorized or subsequently ratified by him, and he likewise is not bound to pay the amount of the settlement agreed upon.

Id. at 71 (emphasis supplied). See also, Isaacson v. Boswell, 18 N.J.Super. 95, 86 *1042 A.2d 695, 698 (App.Div.1952); 15A COUCH ON INSURANCE 2D § 59:49 (1983).
¶ 23. There is every indication that Kopszywa's attorney understood that the obligation to fund the settlement rested with Paramount and not Gulfport Pilots, though he may not have been particularly happy about that fact. At one hearing, Kopszywa's attorney was complaining about the difficulty of pursuing a claim directly against Paramount. In the course of his argument to the court, counsel said:
... I'm a little in the dark about how I can proceed to collect my judgment on an insurance company located in the Bahamas who was not a party to this litigation and could not be made under Mississippi law a party to this litigation but who has entered into a settlement on behalf of their insured through counsel representing their insured who has spoken as the agent on their behalf.

¶ 24. There has been no evidentiary hearing to determine what the parties agreed to insofar as the source of funding for the settlement. The trial court had nothing to go on beyond the representations made to the court by the attorneys in the course of argument. Even these arguments show that there is a genuine dispute of fact as to what Gulfport Pilots (and not its insurer, Paramount) agreed to do in regard to settling this claim. Argument of counsel is not evidence upon which the trial court may draw to resolve disputed issues of fact. Until an appropriate evidentiary hearing has been conducted to determine the true terms of the settlement agreement, this case cannot be properly decided.
¶ 25. It must be kept in mind that Gulfport Pilots would not escape all liability to Kopszywa even if it prevails on this appeal. Kopszywa would still have his underlying claim under the Jones Act. It would be an unliquidated claim, to be sure, but Kopszywa's complaint indicates that he values his claim at substantially more than the settlement amount. There is no reason that his recovery, in a trial on the merits, might not exceed the settlement negotiated with Paramount.
¶ 26. In my view, we should reverse and remand for a fact-finding hearing to determine Gulfport Pilots's separate obligation under the settlement, if any such obligation exists. If no such obligation is found to exist, the court should proceed to resolve the actual dispute underlying the aborted settlement.
SOUTHWICK, P.J., AND COLEMAN, J., JOIN THIS SEPARATE OPINION.