**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2003-CA-01600-SCT**
**CONSOLIDATED WITH**
**NO. 97-CA-01178-SCT**

*STEPHANIE HOWARD, EXECUTRIX OF THE*
*ESTATE OF GERALD DONALD*

*v.*

*TOTALFINA E&P USA, INC. (FINA OIL AND*
*CHEMICAL COMPANY); MURPHY OIL USA, INC.;*
*ARCO OIL AND GAS COMPANY; ATLANTIC*
*RICHFIELD; AMOCO PRODUCTION COMPANY;*
*VINTAGE PETROLEUM, INC.; ANADARKO*
*PETROLEUM CORPORATION (CHAMPLIN*
*PETROLEUM COMPANY-UNION PACIFIC*
*RESOURCES); EXXONMOBIL; ORYX ENERGY*
*CORPORATION; UNION OIL COMPANY OF*
*CALIFORNIA; BASS ENTERPRISES PRODUCTION*
*COMPANY; OCCIDENTAL CHEMICAL; OXY USA.,*
*INC. (INDIVIDUALLY AND AS SUCCESSOR IN*
*INTEREST TO CITIES SERVICE OIL & GAS*
*CORPORATION); PLACID OIL COMPANY;*
*CONOCOPHILLIPS; MARATHON OIL COMPANY*
*(INDIVIDUALLY AND AS SUCCESSOR IN*
*INTEREST TO TXO PRODUCTION CORP.);*
*TENNECO OIL COMPANY; INEXCO OIL*
*COMPANY; MOON-HINES-TIGRETT OPERATING*
*COMPANY, INC.; TEXACO INC.; FOUR STAR OIL*
*AND GAS COMPANY (AS SUCCESSOR TO GETTY*
*OIL COMPANY); CHEVRON U.S.A., INC.;*
*CHEVRON CORPORATION; SHELL WESTERN*
*EXPLORATION & PRODUCTION, INC.; AND*
*CONQUEST EXPLORATION COMPANY*

DATE OF JUDGMENT:          06/05/2003
TRIAL JUDGE:               HON. LARRY EUGENE ROBERTS
COURT FROM WHICH APPEALED: WAYNE COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT:          JOHN W. BOLING
                                  MICHAEL G. STAG
                                  STUART H. SMITH
ATTORNEYS FOR APPELLEES:          BENJAMIN ZACHARY WISE
                                  JULIE E. CHAFFIN
                                  JESSE LEE HOWELL
                                  STEVEN CRAIG PANTER
                                  JEFFERY P. REYNOLDS
                                  DAVID L. MARTINDALE
                                  NORMAN GENE HORTMAN, JR.
                                  C. GLEN BUSH
                                  THOMAS R. HUDSON
                                  MARK A. NELSON
                                  THOMAS C. ANDERSON
NATURE OF THE CASE:              CIVIL - TORTS-OTHER THAN PERSONAL
                                 INJURY & PROPERTY DAMAGE
DISPOSITION:                     AFFIRMED IN PART; REVERSED AND
                                 REMANDED IN PART - 03/03/2005
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This is the second time that this case has been before this Court on appeal because of the trial court's dismissal. The owner of the property, Gerald Donald, died, and the property was inherited by his daughter and sole heir, Stephanie Howard. The underlying lawsuit alleged that Fina Oil & Chemical Company, et al. [hereinafter the Fina Group], were responsible for the toxic waste that was dumped on Donald's property. Initially, this case was dismissed on September 3, 1997. Subsequently, this Court reversed the dismissal in part and remanded for further proceedings. ***Donald v. Amoco Prod. Co.***, 735 So. 2d 161 (Miss. 1997). Following remand, the circuit court ordered Fina Group to produce documents and other information relevant to their involvement in the hazardous waste site at issue.

¶2.    At the time, the case was proceeding in compliance with the mandate of this Court. The parties then conducted mediation and, according to Howard, on August 23, 2003, reached an agreement on the terms of the settlement. This asserted agreement was inclusive of the transfer of the property to the Fina Group for the purpose of facilitating the cleanup. However, before the alleged agreement could be formalized, this Court issued its decision in *Chevron U.S.A., Inc. v. Smith*, 844 So. 2d 1145 (Miss. 2003), which required the exhaustion of administrative remedies before filing suit in a case concerning groundwater damages at an oil field site. With this decision in hand, the Fina Group filed another motion to dismiss. In response, Howard filed a motion to enforce the alleged settlement agreement. Accordingly, the trial court declined to enforce the settlement agreement and dismissed the case because it determined that Howard could not assert common law claims of negligence, nuisance, trespass, strict liability, and breach of contract until the available administrative remedies were exhausted before the Mississippi Oil and Gas Board.

### FACTS AND PROCEEDINGS BELOW

¶3.    On August 16, 1991, Gerald Donald bought a 20-acre parcel of land in Wayne County, Mississippi, for the appraised value. Prior to his purchase of the property, Donald leased a small parcel of the property from Davis Brothers for the purpose of operating his wood yard. He was forced to seek purchase of this property from the bank in order to protect his improvements and to continue business at the wood yard. Specifically, he acquired title to the property by quitclaim deed from the Bank of Waynesboro (now Bankplus) which had seized the property at foreclosure. The former owners, the Davis Brothers, were in the business of providing oil well maintenance services to various oil companies. In his complaint, Donald

3

alleged that Davis Brothers transported the oil field waste to the property and disposed of it there. Donald did not discover the waste until 1995. Along with the 20 acres of property he purchased, Donald also unknowingly purchased oil sludge, tar, volatile hydrocarbons, radium scale, and heavy metals–all of which were produced by wells owned or operated by oil companies that contracted with Davis Brothers. Upon his death, Donald's daughter, Stephanie Howard, inherited the property, and the circuit court granted the plaintiff's motion to substitute Howard as plaintiff for her deceased father.

## DISCUSSION

### I. DID THE TRIAL COURT ERR BY DISREGARDING THE MANDATE OF THIS COURT IN *DONALD v. AMOCO?*

¶4. The standard of review of questions of law is de novo. *Miss. Transp. Comm'n v. Fires*, 693 So. 2d 917, 920 (Miss. 1997). Further, "[t]his Court must reverse for erroneous interpretations or applications of law." *Id.* This Court has also stated that it "cannot overturn the decree of a chancellor unless it finds with reasonable certainty that the decree is manifestly wrong on a question of law or interpretation of facts pertaining to legal questions." *In re City of Oak Grove*, 684 So. 2d 1274, 1276 (Miss. 1996) (citations omitted). The findings of the circuit court are accorded the same deference as a chancellor's fact findings. *Kight v. Sheppard Bldg. Supply, Inc.*, 537 So. 2d 1355, 1358 (Miss. 1989) (citing *Hardy v. First Nat'l Bank*, 505 So. 2d 1021, 1023 (Miss. 1987)).

¶5. The trial judge erred in dismissing Howard's common law claims of negligence, nuisance, trespass, strict liability, and breach of contract, but he did not intentionally disregard a mandate of this Court. Howard alleged that in *Donald*, this Court, in addition to reversing a

4

prior judgment of dismissal, stated her claims were actionable. ***Donald v. Amoco Prod. Co.***, 735 So. 2d 161 (Miss. 1999). However, this Court stated that these claims were improperly dismissed under the Rule 12(b)(6) standard of review. ***Id.*** This Court did not state that Howard's claims were *actionable*, but simply inferred that the claims were facially sufficient enough to survive a Rule 12(b)(6) motion. In other words, the facts as Donald alleged them are true, then he did state a claim upon which relief could be granted. M.R.C.P. 12(b)(6).

¶6. The circuit judge dismissed Howard's claims because the intervening decision in ***Chevron U.S.A. Inc. v. Smith***, 844 So. 2d 1145 (Miss. 2002), was handed down by this Court during the course of pre-trial proceedings and attempted mediation. The Fina Group then filed a motion to dismiss Howard's claims on the basis that her action was premature because she had failed to exhaust her administrative remedies, as enumerated in ***Chevron. Id.*** When the circuit judge granted the Fina Group's motion to dismiss, he did so based on an erroneous interpretation of the law. The circuit judge misapplied this Court's ruling in the ***Chevron*** case to the facts in the case sub judice. ***Id.*** Since Howard raised this assertion as a separate issue on appeal, a subsequent discussion of said issue ensues.

¶7. Accordingly, this Court finds that the dismissal of Howard's claims was erroneous. However, the circuit judge's basis for dismissal was not due to a disregard of this Court's mandate, but instead, an error in misinterpreting ***Chevron. Id.*** Nevertheless, this Court finds that the circuit judge was manifestly wrong by dismissing Howard's claims.

**II.    DID THE TRIAL COURT ERR IN APPLYING *CHEVRON v. SMITH* TO HOLD THAT HOWARD MUST EXHAUST ALL ADMINISTRATIVE REMEDIES BEFORE THE MISSISSIPPI OIL & GAS BOARD PRIOR TO FILING A PRIVATE ACTION?**

5

**Oil and Gas Board jurisdiction**

¶8.    Howard asserts that since the Mississippi Oil and Gas Board [hereinafter the Board] lacks jurisdiction over the claims she raised, she is thereby not required to exhaust potential administrative remedies before filing suit.    The jurisdictional issue must be addressed before enumerating upon whether Howard must first exhaust administrative remedies.

¶9.    The Fina Group claimed that the Board had jurisdiction over this case because the Board purportedly issued a permit to the Davis Brothers.    The only evidence that the Fina Group offered that related to the purported permit was taken from Phil Davis' deposition.    The permit in question, if it ever existed, could not be located.    Counsel for one of the companies within the Fina Group stated "Judge, I have looked for–it's been a long time ago, apparently they don't still have a record going back that far of the permits.    I haven't seen the actual permit.    *I just know it existed because of what Phil Davis said*." (emphasis added).    In response, Howard's counsel said:

> [t]hey can't produce you a permit, Judge, because first of all, I don't think it existed; secondly, Phil Davis testified in that same deposition that he was in Alabama when this was going on.    And by the way, Phil Davis testified that he invented a ***perpetual motion machine*** too, Your Honor.    I'm serious, Judge. Now this is the man that Mr. Reynolds wants you to decide this case on.    He's invented a machine that makes more energy than it uses.    There is no permit for them to dump this radioactive waste on this property.    And even assuming argumentatively there was a permit, the permit would only cover the tip, it wouldn't cover these other areas that were contaminated from the illegal dumping.

(Emphasis added).    The Fina Group's reliance upon this witness is misplaced as well as insufficient by way of proof that a permit was actually issued.

6

¶10. Howard maintained that the Board lacks jurisdiction for several reasons. First of all, she distinguished the case sub judice from the *Chevron* case, relied upon by the circuit judge. *Chevron v. Smith*, 844 So. 2d 1145. Howard claimed that the reason this Court found that the Board retained jurisdiction over the claims raised in *Chevron* is because oil and gas exploration activities took place on the site at issue pursuant to a mineral lease. *Id.* In contrast, in Howard's case, no oil and gas drilling or production took place on the Donald property, and there was no mineral lease at issue either. Also, in the *Chevron* case, the Smiths were surface owners of the acreage. The contamination resulted from a saltwater storage facility that was in a unit field. Accordingly, the surface owner is subject to a unit agreement as per the lease agreement. The property at issue was a working, operating oil field–quite unlike the Donald property. Since the Donald property was used as a "dump site" and there was no oil and gas exploration and production, that the Board does not have jurisdiction.

¶11. Secondly, Howard claimed that the Board lacks jurisdiction in this case because the waste that was disposed of was that of commercial waste instead of noncommercial disposal of waste, which is necessary in order to confer jurisdiction on the Board. In the *Chevron* case, the Fina Group contaminated the groundwater directly through the production of oil and gas on the property. *Id.* The petroleum wastes that were being generated and disposed of on site resulted from the normal activities in producing oil and gas. The disposal in *Chevron* is distinct from the case at bar and falls clearly under the authority of the Board in Section 17-17-47 of the Mississippi Code. The Board's authority does not extend to the regulation of commercial disposal of waste products, like the waste dumped onto the Donald property. The applicable

7

statute unambiguously limits the Board's authority and jurisdiction to noncommercial disposal of oil field exploration and production wastes.  It provides:

> (1)  Notwithstanding any other provisions contained in this chapter, the State Oil and Gas board shall continue to exercise the *exclusive* authority to make rules and regulations and issue permits governing the *noncommercial disposal* of oil field waste products . . . .

Miss. Code Ann. § 17-17-47 (Rev. 2003) (emphasis added).  Instead, according to Section 17-17-47, it is the Commission on Environmental Quality that has "exclusive authority to regulate commercial disposal of oil field exploration and production of waste products." *Id.*

¶12.    Further, commercial waste is defined as the "storage, treatment, recovery, processing disposal, or acceptance of oil field exploration and production waste from more than one (1) generator fee."  Miss. Code Ann. § 17-17-3(e).  The Davis Brothers operated a commercial disposal facility on the Donald property, and they accepted as well as disposed of waste from numerous generators, as identified in the complaint.  As previously mentioned, no oil wells were drilled on the property.  Instead, the Fina Group paid the Davis Brothers a fee to accept, transport, and dispose of the waste.  Howard's counsel stated that

> once there is a commercial disposal activity on the site it is no longer under the jurisdiction of the Oil and Gas Board . . . Once they gave the waste to the Davis Brothers and the Davis Brothers transported or disposed of it for a fee, that is not Oil and Gas Board, it is DEQ . . .They did not respond to the arguments in my brief.  On the statute . . . what they did say, [sic] Oh well, Mr. Davis, who was living in Alabama, said we had *some permit for some pit.* Instead of talking about the law, they talk about some deposition of this gentleman that really had no firsthand knowledge.  *And there is no permit.*  As a matter of fact, Mr. Donald testified in his deposition that DEQ representatives visited the site *not the Oil and Gas Board.*

(Emphasis added). Since the Donald property was damaged through commercial disposal activities which are beyond the authority of the Board, this Court finds that the holding of *Chevron v. Smith* is inapplicable in this case. 844 So. 2d 1145.

**Adequate administrative remedies**

¶13. The circuit judge dismissed this case, without prejudice, on the basis that Howard had not exhausted her administrative remedies as per the *Chevron* case. 844 So. 2d 1145. Judge Roberts stated:

> As I read *Smith*, it requires the Court to dismiss without prejudice plaintiff's complaint. There is no language in the opinion remanding part of the case to the Oil and Gas Board and other parts to the Hinds County Circuit Court. It is a flat dismissal without prejudice, and I assume from that guidance that's my duty in this case. So that would be my instruction to you about a judgment, would be a dismissal without prejudice.

Judge Roberts further stated that "[i]f the Supreme Court meant something different in the *Alcus Smith* case, then I assume if this case goes up again, which I feel certain it will, they can enlighten me again on what they meant in the *Alcus Smith* case and the *Donald v. Amoco Production* original decision." This Court conclusively finds that the circuit judge erred by dismissing the case at bar for Howard's failure to exhaust administrative remedies.

¶14. The Fina Group claims that the Oil and Gas Board has jurisdiction over Howard's claims, so accordingly, she must first pursue her claims through this agency before filing a private suit. When this Court initially heard this case, it only provided administrative relief for the negligence per se claim because it was based upon alleged violations of oil and gas regulations. This Court stated:

9

[T]he statutes and regulations do not provide for or prohibit private causes of action. Regardless, Donald could have and should have filed a written request for hearing with the Board as an 'interested person'. . . Donald did not give the Board a chance to take action. Upon examination of Section 53-1-47, we conclude that the Board could have penalized the Davis Brothers and possibly the Oil Defendants and required them all to pay the costs of clean-up, restoration, etc. Therefore, the administrative remedy is adequate and should have been exhausted prior to filing a private suit. Thus, the negligence per se claim was properly dismissed . . . .

735 So. 2d at 177. In **Donald**, this Court reasoned that although generally, a complainant must exhaust the administrative remedies available to him before resorting to the courts for resolution, if an adequate administrative remedy is not provided, then the doctrine of exhaustion is not applicable. **Id.** (citing **State v. Beebe**, 687 So. 2d 702, 704 (Miss. 1996); **Campbell Sixty-Six Exp., Inc., v. J & G Exp., Inc.**, 244 Miss. 427, 440, 141 So. 2d 720, 726 (1962)).

¶15. Furthermore, **Chevron v. Smith** did not overrule **Donald.** Rather, this Court cited **Donald** favorably for the proposition that administrative remedies must be exhausted in a groundwater pollution case where the Board retains jurisdiction. Again, the Donald property concerns commercial surface waste and does not concern the noncommercial groundwater pollution at issue on the Smith property in the **Chevron** case. Finally, any claims that may have been subject to the authority of the Board (the negligence per se claims involved in the first appeal) have already been dismissed. The only claims that remain are those based on common law, over which this Court finds that the Board has no authority.

¶16. Therefore, since the remaining claims–negligence, nuisance, trespass, breach of contract, strict liability, and outrageous conduct– do not specifically relate to an administrative

10

remedy, this Court finds that they were improperly dismissed without prejudice by the circuit judge.

### III. DID THE TRIAL COURT ERR BY DENYING HOWARD'S MOTION TO ENFORCE A SETTLEMENT AGREEMENT?

¶17. It is well settled that "[t]his Court will not disturb the findings of a chancellor unless it is shown the chancellor was clearly erroneous and the chancellor abused his discretion." *Hill v. Southeastern Floor Covering Co.*, 596 So. 2d 874, 877 (Miss. 1992); *Bell v. Parker*, 563 So. 2d 594, 597 (Miss. 1990). This Court has stated that the findings of a circuit court are accorded the same deference as a chancellor's fact findings. *Kight v. Sheppard Bldg. Supply, Inc.*, 537 So. 2d at 1358 (citing *Hardy v. First Nat'l Bank*, 505 So. 2d 1021, 1023 (Miss. 1987)). Abuse of discretion is found when the reviewing court has a "definite and firm conviction" that the court below committed a clear error of judgment and the conclusion it reached upon a weighing of the relevant factors. *Caracci v. Int'l Paper Co.*, 699 So. 2d 546, 556 (Miss. 1997).

¶18. Howard claimed that the circuit judge erred by failing to enforce a settlement agreement. Since a settlement agreement is a contract, it must be determined if there was an actual meeting of the minds. *McManus v. Howard*, 569 So. 2d 1213, 1215 (Miss. 1990). This Court has previously stated that in order for there to be a settlement, there must be a meeting of the minds. *Thomas v. Bailey*, 375 So. 2d 1049, 1052 (Miss. 1979) (citing *Hutton v. Hutton*, 239 Miss. 217, 230, 119 So. 2d 369, 374 (1960)). Mississippi law requires that the party claiming benefit from the settlement prove by a preponderance of the evidence that there was a meeting

of the minds. *Hastings v. Guillot*, 825 So. 2d 20, 23 (Miss. 2002). The circuit judge did not abuse his discretion by denying Howard's motion to enforce a settlement because there was no meeting of the minds between Howard and the Fina Group.

¶19. In 2001, pursuant to Judge Roberts' suggestion and/or requirement, the parties entered into mediation for settlement purposes in New Orleans. Apparently, the Fina Group was discussing the possibility of paying Howard $380,000 and taking title to the property so they could clean it up. Howard asserted that a settlement was imminent until this Court decided the *Chevron v. Smith*. Howard's counsel stated, during a hearing on her motion to enforce the settlement agreement and request for an expedited hearing, "I can tell you, Your Honor, that I was told these people backed out of this settlement because of the *Alcus Smith* case in the decision by the Mississippi Supreme Court." However, according to the record, Howard filed her motion to enforce the settlement agreement four to six weeks before the *Smith* case was made public. The circuit judge pointedly asked Howard's counsel "how you say with credence what you just said, that their refusal to settle or go through with the settlement was a consequence of the *Smith* decision, when your client made a motion to enforce settlement before the *Smith* decision ever became public?" Howard's attorney never answered the question. However, he did profess that the issue was not the payment of $380,000 and the taking of the title of the property, but instead, the problem seemed to be among the defendants.

¶20. Howard asserted that the letters and documents attached to her brief demonstrate a meeting of the minds between herself and Fina Group. She based that claim on *Gulfport Pilots Ass'n, Inc. v. Kopszya*, 743 So. 2d 1036 (Miss. Ct. App. 1999). However, that case is distinct

from the case sub judice because in the *Gulfport Pilots* case, the correspondence that substantiated the settlement specifically stated that "this claim was settled on March 21, 1997." *Id.* at 1038. In other words, the language of assent in the correspondence clearly evinced a clear meeting of the minds between the parties. The Court of Appeals found that there was a clear demonstration of a meeting of the minds, between both parties, as evidenced by their agreement to settle. *Id.*

¶21. The facts surrounding the purported settlement agreement in the case at issue are, indeed, dissimilar from the facts surrounding the settlement agreement in the *Gulfport Pilots* case. In Howard's case, she claimed that the agreement to settle is apparent because of the letters back and forth between the parties. These letters essentially confirmed telephone conversations among the attorneys. However, the circuit judge wisely pointed out that "in order to have an effectuated settlement, you have to have a meeting of the minds . . . and it has to be expressed to where there is nothing of consequence left undone." He further noted that there were many questions that still existed and continue to remain unanswered with regard to the purported settlement agreement.

¶22. More specifically, counsel for the Fina Group, Reynolds, in his February 25, 2002, correspondence to Smith, counsel for Howard, stated that the proposed settlement would include payment of $380,000 and transfer of the title of the property to a corporate entity. This language is not indicative of a settlement agreement, but instead, it is indicative of a proposed settlement that provides a conceptual framework for the Fina Group and Howard to further negotiate in an attempt to reach a firm settlement. Moreover, correspondence in addition to

13

the letter attached to Howard's brief simply disprove her assertion that a meeting of the minds existed. Although many examples are found within these documents, only a few will be mentioned. In a March 27, 2002, letter from Reynolds to Smith, Reynolds stated "[t]hus you would never know anything about the testing and could not use any documents associated with such in this case or any other case, whether or not this case ultimately settles." Smith, as counsel for Howard, signed the aforementioned letter, which signified his agreement to the substance of the letter which explicitly confirms that no settlement exists.

¶23. Another example of the nonexistence of a settlement agreement is evidenced in a response letter by Reynolds to Smith's May 9, 2002, letter. On May 23, 2002, Reynolds wrote "the appropriate deed will be furnished if the settlement is ever consummated . . . The indemnity language in my proposed release accurately reflects the proposed agreement between the parties." None of the correspondence referred to in the briefs or found within the record demonstrate that a meeting of the minds existed. Like Judge Roberts stated, there are too many unanswered questions and no substantive evidence of an assent. Therefore, this Court finds that the circuit judge did not abuse his discretion by denying Howard's motion to enforce a settlement agreement. This claim is without merit.

## CONCLUSION

¶24. For the aforementioned reasons, this Court finds that the circuit judge erred by dismissing Howard's claims due to a misinterpretation of **Donald.** This Court further finds that the circuit judge erred by dismissing Howard's claims because she failed to exhaust inadequate administrative remedies. Finally, this Court concludes that the circuit judge did not err by

14

denying Howard's motion to enforce a settlement agreement because there was no meeting of the minds.

¶25.    Consequently, this Court affirms the circuit court's judgment to the extent that it denied Howard's motion to enforce the settlement agreement,   reverses the circuit court's judgment in all other respects, and remands this case for further proceedings consistent with this opinion.

¶26.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**WALLER AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR.   GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  DIAZ, J., NOT PARTICIPATING**