STEPHEN A. HIGGINSON, Circuit Judge: *
Wallace Boudreaux, a seaman, entered into a settlement agreement with Trans-ocean Deepwater, Inc. (“Transocean”), his former employer. The agreement provided that Boudreaux would recover one of two amounts from Transocean, depending on the judicial resolution of the parties’ dispute. The district court held that the agreement entitled Boudreaux to the lower amount. We REVERSE.
FACTS AND PROCEEDINGS
Boudreaux claimed he injured his back while working for Transocean. For nearly five years, Transocean paid Boudreaux maintenance and cure — a small daily stipend for food, lodging, and basic medical care. Boudreaux v. Transocean Deepwater, Inc. (Boudreaux I), 721 F.3d 723, 724-25 (5th Cir.2013). Boudreaux later sued Transocean, claiming a right to additional maintenance and cure, seeking punitive damages for Transocean’s alleged mishandling of past benefits, and asserting claims for Jones Act negligence and unseaworthiness. Id. at 724. Through discovery, Transocean learned that Boudreaux had failed to disclose serious back problems in Transocean’s pre-employment medical questionnaire in response to inquiries regarding his history of back trouble. Id. Transocean filed an unopposed motion for partial summary judgment on Boudreaux’s claim for further maintenance and cure. Id. Transocean relied on the McCorpen defense, which provides that “a vessel owner’s obligation to pay maintenance and cure to an injured seaman terminates upon proof that the seaman, in procuring his employment, ‘intentionally’ and “willfully’ concealed a material medical condition causally linked to the injury later sustained.” Id. at 725 (quoting McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547, 549 (5th Cir.1968)). The district court granted Transocean’s motion and dismissed the claim for further maintenance and cure. Id. at 725.
Transocean then filed a second motion for summary judgment on Boudreaux’s claims for negligence under the Jones Act and unseaworthiness under the general maritime law. The district court denied that motion. Transocean then filed a counterclaim against Boudreaux, seeking to recover payments that it had already made for maintenance and cure. Trans-ocean moved for summary judgment on the counterclaim, arguing that its successful McCorpen defense established its right to restitution under the general maritime law. Transocean’s proposed theory of restitution presented an issue of first impression in our circuit. See Patterson v. Allseas USA, 145 Fed.Appx. 969, 970-71 (5th Cir.2005) (per curiam) (acknowledging that the return of maintenance and cure payments via restitution was res nova but declining to reach the issue because the employer had not established a McCorpen defense).
Before the district court ruled on Trans-ocean’s motion for summary judgment on its counterclaim, the parties reached a *330 bracketed settlement agreement. Boudreaux I, 721 F.3d at 725. Initially, the parties filed a “Joint Motion for Revised Scheduling Order” (“Joint Motion”), which provided that the parties “have reached a bracketed settlement agreement which has resolved all of the issues currently pending before the [district c]ourt, with the exception of Transocean’s legal/substantive right to maintain a Counterclaim against Wallace Boudreaux for recovery of its maintenance and cure payments.” The Joint Motion further provided that after the district “[c]ourt’s ruling, the prevailing party will consent to their opponent’s application to [the district court] for a certification of interlocutory appeal to the- United States Fifth Circuit.” The parties also “stipulate[d] that upon receiving a final ruling from the United States Fifth Circuit, the case will not need to be returned to the Court’s trial docket, and absent an instruction from the Fifth Circuit for further findings by the trial court, the parties will promptly submit a Motion to Dismiss as of Settlement.”
Later, the parties memorialized their agreement in a “Receipt, Release, Indemnity and Hold Harmless Agreement” (“Release”). The Release states that “Bou-dreaux has agreed to dismiss all his claims against Transocean, including those for Jones Act negligence, unseaworthiness, and for payment of additional maintenance and cure, while allowing Transocean to maintain its counterclaim under the terms and conditions of the ‘high-low[5] settlement agreement described herein.” Further, the Release provides:
Transocean and Boudreaux agree to compromise and settle all disputes between them, with the precise amount of the settlement to be determined by the Court’s ruling on whether a Jones Act employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under McCorpen. If a Jones Act employer is not allowed to recover maintenance and cure payments made to a seaman who is not entitled to' such payments under McCorpen, Boudreaux will recover $90,000.00 (the “high” amount or the “maximum”). If a Jones Act employer is allowed to recover such maintenance and cure payments, Bou-dreaux will recover only $50,000.00 (the “low” or “minimum” amount).
Finally, the Release states that it “contains the entire agreement between the parties hereto.”
The district court granted Transocean’s motion for summary judgment on its counterclaim, concluding that employers such as Transocean are entitled to restitution of maintenance and cure payments. On interlocutory appeal, this court reversed the district court. Our court rejected Trans-ocean’s argument that a Jones Act employer who successfully establishes a defense to liability for further maintenance and cure under McCorpen is thereby automatically entitled to restitution for benefits already paid. Boudreaux I, 721 F.3d at 724, 726. However, the court noted, “[a]l-ready, even without fraud, an employer may offset any Jones Act damages recovered by the seaman to the extent they duplicate maintenance and cure previously paid.” Id. at 727. Our court concluded that past payments for maintenance and cure “can be recovered only by offset against the seaman’s damages award — not by an independent suit seeking affirmative recovery. The case for exercising our extraordinary power to create á new right of action has not been made.” Id. at 728.
Transocean filed a petition for a writ of certiorari. See Transocean Deepwater, Inc. v. Boudreaux, — U.S. -, 134 act 1001, 187 L.Ed.2d 850 (2014) (denying certiorari). Meanwhile, Boudreaux *331 moved in the district court to enforce the settlement, seeking the high value. Trans-ocean opposed this motion, arguing that it was premature before the Supreme Court ruled on its petition. Before the district court addressed these arguments, the Supreme Court denied certiorari. Trans-ocean then filed a supplemental opposition to Boudreaux’s motion to enforce the settlement, contending for the first time that the limited right to “recovery” recognized in Boudreaux I triggered the low settlement value under the terms of the Release. The district court agreed with Transocean and denied Boudreaux’s motion. Boudreaux timely appealed. After oral argument, Transocean filed an opposed motion to incorporate the record from Boudreaux I.
DISCUSSION
As a threshold matter, we consider Transocean’s motion to incorporate .the record from the prior appeal. While we find it unnecessary to incorporate the record from Boudreaux I, we will take judicial notice of that record. See ITT Rayonier Inc. v. United States, 651 F.2d 343, 345 n. 2 (5th Cir. Unit B 1981) (“A court may ... take judicial notice of its own records or of those of inferior courts.”)[1]
The parties’ dispute largely hinges on the proper interpretation of the Release. We must first decide which law governs that issue. Boudreaux argues that the district court erred in interpreting the Release under state law, and not federal admiralty law. However, Boudreaux waived that argument by arguing for Mississippi law in the district court. “[P]arties generally are bound by the theory of law they argue in the district court, absent some manifest injustice.” Am. Int’l Trading Corp. v. Petroleos Mexicanos, 835 F.2d 536, 540 (5th Cir.1987) (internal quotation marks and citation omitted); see also Empl’rs Ins. of Wausau v. Occidental Petroleum Corp., 978 F,2d 1422, 1430 n. 8 (5th Cir.1992). Manifest injustice requires “extreme circumstances;” that a different jurisdiction’s law dictates a different result does not constitute manifest injustice. Petroleos Mexicanos, 835 F.2d at 540. Bou-dreaux has argued only that federal law must apply, not that a manifest injustice will result by applying state law. We will therefore apply state law to interpret the parties’ agreement. While Boudreaux relied on Mississippi law in the district court, Transocean cited Louisiana law. Because the relevant laws of Mississippi and Louisiana do not conflict, we need not engage in a choice-of-law analysis. See Mumblow v. Monroe Broad., Inc., 401 F.3d 616, 620 (5th Cir.2005) (“[I]f the laws of the states do not conflict, then no choice-of-law analysis is necessary.” (internal quotation marks and citation omitted)).
The Release is a settlement agreement, which is a contract under both Louisiana and Mississippi law. Celtic Marine Corp. v. James C. Justice Cos., 760 F.3d 477, 481-82 (5th Cir.2014) (applying Louisiana law); Howard v. TotalFina E & P USA, Inc., 899 So.2d 882, 888-89 (Miss.2005). Under general principles of contract interpretation, we must first seek to determine the parties’ intent by examining the language of the Release. See HeartSouth, PLLC v. Boyd, 865 So.2d 1095, 1105 (Miss.2003) (“First, the court will attempt to ascertain intent by examining the language contained within the ‘four corners’ of the instrument in dispute.” (internal citation and quotation marks omitted)); Campbell v. Melton, 817 So.2d 69, 74 (La.2002) (“The interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words *332 their generally prevailing meaning unless the words have acquired a technical meaning.”)- We will consider the entire document, interpreting each provision in light of the others. See La. Civ.Code Ann. art. 2050 (“Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.”); Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So.2d 748, 752 (Miss.2003) (“When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses.”). Extrinsic evidence may be consulted only if the contract’s terms are ambiguous. Gebreyesus v. F.C. Schaffer & Assocs., 204 F.3d 639, 643 (5th Cir.2000) (applying Louisiana law); Facilities, Inc. v. Rogers-Usry Chevrolet, Inc., 908 So.2d 107, 111 (Miss.2005). “When the terms of a contract are unambiguous and lead to no absurd consequences, we interpret them as a matter of law.” Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co., 89 F.3d 243, 246 (5th Cir.1996); see also Griffin v. Tall Timbers Dev., Inc., 681 So.2d 546, 551 (Miss.1996).
The district court determined that the Release is not ambiguous. The court held, “[t]he parties unambiguously agreed that the operative question for determining whether the upper or lower settlement amount controlled was ‘whether a Jones Act employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under McCorpen.’” Because our court held that employers may “recover” such payments through an offset, the district court determined that Boudreaux was entitled only to the lower amount. On appeal, Transocean defends the district court’s interpretation, while Boudreaux argues that the word “recover” in the Release, when read in context, “meant only a right to affirmative recovery by a restitution counterclaim.”
We review de novo both the district court’s determination that a contract is unambiguous and its interpretation of an unambiguous contract. Henley v. Edlemon, 297 F.3d 427, 430 (5th Cir.2002); Tarrant Distribs. Inc. v. Heublein Inc., 127 F.3d 375, 377 (5th Cir.1997). The Release provides that “the precise amount of the settlement [is] to be determined by the Court’s ruling on whether a Jones Act employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under McCorpen.” The Release further provides that Boudreaux would receive the high settlement amount “[i]f a Jones Act employer is not allowed to recover” such payments, and that Boudreaux would receive the low settlement amount “[i]f a Jones Act employer is allowed to recover” such payments. The key question is the parties’ intended meaning of “recover.”
The Release makes clear that the issue presented to the district court and to our court previously was whether a Jones Act employer is entitled to restitution of maintenance and cure whenever McCorpen applies, even in the absence of any damages award to offset. The Release states that Boudreaux “agreed to dismiss all his claims against Transocean, including those for Jones Act negligence, unseaworthiness, and for payment of additional maintenance and cure, while allowing Transocean to maintain its counterclaim under the terms and conditions of the ‘high-low[5] settlement agreement described herein.” Because Boudreaux dismissed all his claims against Transocean, there was no possibility that he could receive damages that could be offset. The parties therefore anticipated that the court’s “ruling” would determine whether an employer is entitled to restitution in the absence of damages to offset. *333 Hence, the right to “recover,” whose existence the parties anticipated would be made clear by the “ruling,” refers to an affirmative right of recovery not through an offset, and our court declined to recognize such a right. This conclusion finds further support in the statement that Transocean would “maintain its counterclaim under the terms and conditions of the ‘high-low[1] settlement agreement.” Because our court’s holding in Boudreaux I did not establish the viability of Trans-ocean’s counterclaim, Boudreaux is entitled to the higher settlement amount.
Our construction of the Release is reinforced by the parties’ description of the question on which Boudreaux’s recovery hinges: “whether a Jones Act employer is allowed to recover maintenance and cure payments made to a seaman who was never entitled to such payments under McCorpen,” That explicit language and framing indicate that the parties intended that the right to “recover” would turn on a successful McCorpen defense. In addition, the Release stated that “Transocean believe[d]” this issue to be “unsettled.” However,, in Boudreaux I, the court framed the right to an offset not as a new right based on the McCorpen defense, but rather as a preexisting right based on the well-established principle against double recovery. Boudreaux I, 721 F.3d at 727. Citing caselaw, our court observed that Jones Act damages for past medical expenses, food, and lodging may duplicate maintenance and cure payments, and that a seaman may not recover twice for these items. Id. at 727 n. 19; Brister v. A.W.I., Inc., 946 F.2d 350, 361 (5th Cir.1991) (“[A] seaman clearly can receive only one recovery for his medical expenses. Since the element of past medical expenses is inherent in each of the two types of recoveries [Jones Act damages and maintenance and cure], there must not be a duplication in the final award.”); Averett v. Diamond Offshore Drilling Servs., Inc., 980 F.Supp. 855, 859 (E.D.La.1997) (“[The seaman] has already received wages plus fringe benefits which included the food and lodging as part of his general damage award under the Jones Act and General Maritime Law.... Recovery of this item of damage under the vessel owner’s maintenance and cure obligation would be double recovery and thus is not allowed.” (citing Colburn v. Bunge Towing, Inc., 883 F.2d 372 (5th Cir.1989))). Citing these cases and others, the court in Boudreaux I observed that the right to an offset representing duplica-tive damages was available “[already, even without fraud.... This, if the employer ‘show[s] that the damages assessed against it have in fact and in actuality been previously covered.’” Boudreaux I, 721 F.3d at 727 (alteration in original) (quoting Wood v. Diamond M. Drilling Co., 691 F.2d 1165, 1171 (5th Cir.1982)). Importantly, we emphasized that we were not creating “a new right of action.” Id. at 728 (“The case for exercising our extraordinary power to create a new right of action has not been made.”). While the court recognized a preexisting right unrelated to McCorpen, the settlement amount, as provided in the Release, hinges on the creation of a new right of recovery based on McCorpen. This distinction reinforces our conclusion that the term “recover” in the Release was not intended to include the right to recover via offset recognized in Boudreaux I.
Because we conclude that Boudreaux is entitled to the higher settlement amount under the plain language of the Release, we need not decide Boudreaux’s arguments that he is entitled to the higher amount based on the Joint Motion, Trans-ocean’s “judicial admissions,” the mandate rule, the party presentation principle, or estoppel doctrines.
*334 Boudreaux additionally argues that Transocean breached the Joint Motion and the Release by petitioning for Supreme Court review of our decision in Boudreaux 1, although the remedy Boudreaux seeks for this alleged breach is unclear. The Release does not state that Transocean relinquished its right to petition for certio-rari. In the Joint Motion, the parties “stipulated” that
upon receiving a final ruling from the United ,States Fifth Circuit, the case will not need to be returned to the [district c]ourt’s trial docket, and absent an instruction from the Fifth Circuit for further findings by the trial court, the parties will promptly submit a Motion to Dismiss as of Settlement.
Boudreaux argues that this stipulation is comparable to a contract and is binding on the parties. See Rathborne Land Co., L.L.C. v. Ascent Energy, Inc., 610 F.3d 249, 262 (6th Cir.2010) (“Normally a party is bound by his stipulations as a stipulation among the parties to a lawsuit is akin to a contract.” (internal quotation marks and citation omitted)); 4 Williston on Contracts § 8:60 (4th ed.) (“There is a class of agreements, known as stipulations, made by adverse parties or their authorized attorneys with reference to legal proceedings pending before a court, which are generally upheld and enforced even in the absence of consideration.”). Assuming that the parties are bound by the stipulation in the Joint Motion, that stipulation does not forbid Transocean from seeking Supreme Court review.[2] We have held that “[a] stipulation binds parties only to the terms actually agreed upon.” Rice v. Glad Hands, Inc., 760 F.2d 434, 438 (6th Cir.1985). Although the parties stated that they would “promptly submit a Motion to Dismiss” after our court’s earlier ruling, the word “promptly” does not alone preclude a petition for certiorari. Indeed, only six months elapsed between our ruling and the Supreme Court’s denial of the petition for certiorari. See Transocean Deepwater, Inc. v. Boudreaux, — U.S. -, 134 S.Ct. 1001, 187 L.Ed.2d 860 (2014). In addition, “promptly” modifies the promise to submit a motion to dismiss, which neither party filed because they disputed the import of our ruling.
Boudreaux appears to have argued in the district court for the application of Mississippi law to the interpretation of the Joint Motion, and, as noted, he is bound by the theory of law that he argued below. See Petroleos Mexicanos, 835 F.2d at 640. The Mississippi Supreme Court has held that a waiver of appeal rights “should be very clear in its terms, and leave no doubt of the intention of the party to cut himself off from the right of appeal.” Nobile v. Nobile, 636 So.2d 1385, 1387 (Miss.1988); see also Cherokee Ins. Co. v. Babin, 37 So.3d 45, 48 (Miss.2010) (holding that a settlement agreement did not waive appeal rights because it did not contain language that “clearly expresses a waiver”); State in Interest of Jones v. Jones, 430 So.2d 169, 171 (La.Ct.App.1983) (“Appeals are favored and any waiver of appeal must be expressly made.”). Applying state law, the Joint Motion was not sufficiently clear to waive Transocean’s right to seek Supreme Court review. Even if we apply the general maritime law, as Boudreaux now requests, we reach the same result. Our court recently held, under the general maritime law: “[W]here a settlement agreement does not resolve claims itself but instead establishes a mechanism pur *335 suant to which the district court will resolve claims, parties must expressly waive what is otherwise a right to appeal from claim determination decisions by a district court.” In re Deepwater Horizon, 785 F.3d 986, 997 (5th Cir.2015). We believe the situation before us is analogous. The Joint Motion does not itself resolve claims, but rather notifies the court of a settlement and requests a revised schedule to allow for judicial resolution of one disputed issue. On these facts, silence about the right to petition for certiorari does not waive that right.[3]
CONCLUSION
Because we find that the Release unambiguously entitles Boudreaux to the higher settlement amount, we REVERSE the district court and REMAND for proceedings consistent with this opinion.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

. Transocean's motion to incorporate the record from the prior appeal is DENIED.

. Although we have previously reviewed a district court's interpretation of a stipulation for abuse' of discretion, see Coastal States Mkt'g, Inc. v. Hunt, 694 F.2d 1358, 1368 (5th Cir.1983), the district court here did not interpret the stipulation in the Joint Motion, even though Boudreaux raised below the argument that he makes here.

. We further reject Boudreaux's argument that Transocean made two judicial admissions in its briefs that precluded it from seeking a writ of certiorari. Transocean’s statements— that “the appeal will end the litigation, as there is no need for further proceedings in the trial court,” and that "the legal question certified for appeal is res nova and a decision will resolve this case” — do not reflect the clarity required for a judicial admission. See United States v. Chavez-Hernandez, 671 F.3d 494, 501 (5th Cir.2012) ("[F]or a statement of counsel to qualify as a judicial admission it must be made intentionally as a waiver, releasing the opponent from proof of fact.” (internal quotation marks and citation omitted)); see also In re Corland Corp., 967 F.2d 1069, 1074 (5th Cir.1992) (“[Ojnly deliberate, clear and unequivocal statements can constitute conclusive judicial admissions.” (internal quotation marks and citation omitted)).

. McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547, 549 (5th Cir.1968).

. Ante at 333.