919 So.2d 1101 (2005)
The TOWN OF BOLTON, Mississippi, Appellant
v.
CHEVRON OIL COMPANY, Chevron Texaco Corporation and J.R. Pounds, Inc., Appellees.
Mary George W. McMullan and Hilda McRaney, Appellants
v.
Chevron Oil Company, Chevron Texaco Corporation and J.R. Pounds, Inc., Appellees.
Nos. 2004-CA-00865-COA, 2004-CA-00867-COA.
Court of Appeals of Mississippi.
August 2, 2005.
*1102 A. Michael Espy, John Leonard Walker, William Walker, Jackson, Michael G. Stag, attorneys for appellants.
Robert O. Allen, Brookhaven, Reuben V. Anderson, Jane E. Tucker, Michael B. Wallace, Jackson, Jesse Lee Howell, attorneys for appellees.
Before BRIDGES, P.J., CHANDLER and ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. This appeal concerns the dismissal by the Circuit Court for the Second Judicial District of Hinds County of two complaints filed by landowners asserting common *1103 law and other theories of recovery for oil field contamination in or near the Town of Bolton. The circuit court dismissed the complaints without prejudice upon a finding that the landowners had failed to exhaust administrative remedies before the Mississippi State Oil and Gas Board. The landowners appeal, and argue that the complaints should have withstood dismissal because (1) the Oil and Gas Board lacks jurisdiction; (2) the regulations of the Oil and Gas Board provide inadequate remedies for the common law claims; (3) the pursuit of an administrative remedy would result in irreparable harm; and (4) the dispositive questions are of law and do not require the expertise of the Oil and Gas Board. The landowners alternatively argue that, if this Court finds that some of their claims overlap with the jurisdiction of the Oil and Gas Board, their remaining claims should be stayed pending the Board's resolution of the matters within its jurisdiction.
¶ 2. We find that, pursuant to Chevron U.S.A. Inc. v. Smith, 844 So.2d 1145 (Miss. 2002), the landowners were required to exhaust the available remedies before the Oil and Gas Board before seeking relief in the circuit court. We further find that the circuit court should have stayed McMullan and McRaney's common law claims for money damages pending their exhaustion of remedies before the Oil and Gas Board. Therefore, we reverse and remand in part for the circuit court to vacate the dismissal of McMullan and McRaney's common law claims for monetary damages and for the entry of an order staying these claims pending final resolution by the Oil and Gas Board. We affirm the dismissal of McMullan and McRaney's other claims and of the Town's claims.

FACTS
¶ 3. On December 31, 2002, the Town of Bolton filed a complaint in the Circuit Court for the Second Judicial District of Hinds County. On the same day, Mary George W. McMullan and Hilda McRaney filed an almost identical complaint in the same circuit court. The complaints alleged that defendants Chevron Oil Company, Chevron Texaco Corporation, and J.R. Pounds, Inc. (hereinafter, "Chevron") had conducted oil and/or gas exploration and production operations in the Bolton field pursuant to leases from the Town, McMullan, and McRaney (the landowners). The complaints alleged that, during Chevron's operations on or near the landowners' property, Chevron had caused the landowners' property to become contaminated with radioactive scales, residues, precipitates, saltwater, oil, grease, heavy metals, technologically enhanced naturally occurring radioactive materials (TENORM), and other harmful and hazardous substances from oil and gas production activities and equipment.
¶ 4. The landowners asserted various theories of recovery against Chevron for harm caused by the contamination, including the tort theories of negligence, intentional tort, strict liability and res ipsa loquitor. The landowners also alleged that, by contaminating the property, Chevron had breached its lease agreements with the landowners. The landowners further alleged that Chevron had wilfully concealed the harmful effects of TENORM from the landowners, the public, and regulatory authorities, which amounted to fraud, fraudulent concealment, and fraudulent misrepresentation. For Chevron's wilful and wanton failure to warn of the harm caused by TENORM, failure to inspect the property for the presence of TENORM, and failure to comply with applicable regulations, the landowners demanded punitive damages. The landowners also averred that Chevron's acts had unjustly enriched Chevron with the money *1104 it had saved by violating applicable regulations.
¶ 5. Additionally, the landowners alleged that Chevron's acts created a created a public and private nuisance, constituted a nuisance per se due to Chevron's creation of illegal dumps, and constituted waste under the common law and waste as defined by Mississippi Code Annotated section 53-1-3 and section 53-3-3 and certain regulations of the Oil and Gas Board. The landowners also alleged that Chevron's acts violated applicable statutes and regulations and, therefore, constituted negligence per se. For these harms, the landowners "reserv[ed] the right to seek recovery of damages necessary to recover all costs associated with a full and complete remediation and clean-up of Plaintiffs' property and all other damages suffered as a result of Defendant's acts and omissions following an administrative hearing with the appropriate agency" or, alternatively, sought a declaratory judgment "establishing Chevron's liability for all costs of site investigation, monitoring, abatement and cleanup of Defendant's releases of radioactive materials and other harmful and hazardous substances. . . ." The landowners expressly denied that they sought money damages for cleanup of their property.
¶ 6. Instead, the landowners requested money damages for complete loss or diminution of property value, loss of business opportunities for use of the property, administrative costs, engineering and testing costs, attorneys' fees, wrongful savings and profits realized by Chevron, and punitive damages. The Town of Bolton requested additional damages for "loss of critical citizen services caused by loss of use" of its property. The landowners also sought injunctive relief preventing Chevron from causing further contamination.
¶ 7. Chevron moved to dismiss the complaints pursuant to Mississippi Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the ground that the plaintiffs had failed to exhaust their remedies before the Oil and Gas Board. The circuit court granted Chevron's motions and dismissed both complaints without prejudice for failure to exhaust administrative remedies. The landowners separately perfected appeals. This Court has consolidated the appeals of the Town of Bolton and McMullan and McRaney. See M.R.A.P. 3(b).

LAW AND ANALYSIS
¶ 8. For clarity, we address the issues on appeal under a single heading:
I. WHETHER THE TRIAL COURT ERRED BY FINDING THAT THE TOWN'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES BEFORE THE OIL AND GAS BOARD.

A. The Exhaustion Requirement.
¶ 9. The appeal of the circuit court's dismissal of the landowners' claims for failure to exhaust administrative remedies presents a jurisdictional question. Miss. Employment Sec. Comm'n v. Culberston, 832 So.2d 519, 523(¶ 7) (Miss.2002). This Court reviews jurisdictional issues de novo. Jones v. Billy, 798 So.2d 1238, 1239(¶ 2) (Miss.2001). For purposes of this appeal, we regard all of the allegations made in the complaints as true. Lang v. Bay St. Louis/Waveland Sch. Dist., 764 So.2d 1234, 1242(¶ 37) (Miss.1999).
¶ 10. The landowners argue that, because the complaints assert common law theories of recovery, the landowners should not be required to exhaust their administrative remedies before the Oil and Gas Board before proceeding in court. "A complainant must exhaust available administrative *1105 remedies before resorting to the courts for resolution of his dispute." State v. Beebe, 687 So.2d 702, 704 (Miss.1996). But, when no adequate administrative remedy is available, exhaustion is not required. Campbell Sixty-Six Express, Inc. v. J. & G. Express, Inc., 244 Miss. 427, 440, 141 So.2d 720, 726 (Miss.1962). In Campbell, the court examined three variables in determining whether to require exhaustion: "extent of injury from pursuit of administrative remedies, degree of apparent clarity or doubt about administrative jurisdiction, and involvement of specialized administrative understanding in the question of jurisdiction." Id. at 441, 141 So.2d at 726. The court has set out several factors that weigh against an exhaustion requirement: "the pursuit of the administrative remedy would result in irreparable harm; the agency clearly lacks jurisdiction; the agency's position is clearly illegal; the dispositive question is one of law; exhaustion would be futile; and comparatively, the action can be disposed of with less expense and more efficiently in the judicial arena." Pub. Employees' Ret. Sys. v. Hawkins, 781 So.2d 899, 906(¶ 31) (Miss. 2001) (quoting Miss. Dep't of Envtl. Quality v. Weems, 653 So.2d 266, 278 (Miss. 1995)).
¶ 11. The landowners argues that a consideration of these factors weighs against requiring exhaustion in this case. They assert that the Oil and Gas Board lacks jurisdiction because it is incompetent to determine the common law claims asserted in the complaints. The landowners also contend that, because the Board cannot award the types of damages prayed for in the complaint, the landowners' remedies before the Board are inadequate to compensate the landowners for their damages and the pursuit of a remedy before the Board would result in irreparable harm. We find that, pursuant to Chevron U.S.A., Inc. v. Smith, 844 So.2d 1145 (Miss.2002), the landowners cannot seek judicial relief for any of their claims until they exhaust their available remedies before the Oil and Gas Board.
¶ 12. In Chevron, the Smiths owned the surface of real property located in the Brookhaven field. Id. at 1147(¶ 6). The Smiths discovered that their land was contaminated with naturally occurring radioactive materials (NORM) due to oil and gas exploration and production activities on the property. Id. at (¶ 8). But for the contamination, the Smiths' property would have had a value of $55,000. Id. at 1151(¶ 21) (McRae, J., concurring in part and dissenting in part). The Smiths sued Chevron, the original mineral lessee, and its successors in interest in Hinds County Circuit Court. Id. at 1147(¶ 8). Prior to trial, Chevron and COHO, the current mineral lessee, offered to cleanup the Smiths' property. Id. at (¶ 9). The Smiths refused the cleanup offer, and, after a seven-week jury trial, were awarded $2,349,275 in damages. Id. at 1146(¶ 1), 1147(¶ 9).
¶ 13. The supreme court reversed the jury award, stating, "[w]here an administrative agency regulates certain activity, an aggrieved party must first seek relief from the administrative agency before seeking relief from the trial courts." Id. at 1148(¶ 11). The court held that, due to the scope of the Oil and Gas Board's regulatory and enforcement authority, plaintiffs seeking to have oil producers clean up byproduct pollution must seek restoration from the Mississippi Oil and Gas Board before a court can assess the appropriate measure of damages. Id. at (¶¶ 10-13). The court articulated the public policy supporting its decision:
¶ 14. This Court cannot allow a private landowner to pursue restoration of his or her land in the courts of this State by *1106 sidestepping a very vital and useful agency that could help protect the average Mississippian from the dangers of NORM pollution. Since no court can order the plaintiffs in this case to expend the award on decontaminating the property, the outcome allowed by the trial court does nothing to protect the citizens of Mississippi from the dangers of NORM contamination. Nor will this Court allow a windfall to the plaintiffs who obviously have no intention of cleaning up their property since they have refused all such offers of cleanup. Not only will requiring the aggrieved property owner to pursue his claims with the Oil and Gas Board alert the Board to possible wide-reaching violations, it will benefit the courts of this state by helping reduce the amount of time necessary to try cases like this one (if the seven week trial in this instance was not enough). The citizens of this state are better served by having an expert regulatory agency enforce the environmental statutes rather than waiting for the private citizen to bring individual actions for damages and restoration, which are no guarantee that the pollution will be eradicated.
Id. at (¶ 14).
¶ 15. The landowners argues that this case is distinguishable from Chevron because the complaints do not request that Chevron to clean up the contaminated property. Rather, the complaints expressly reserve the landowners' right to seek restoration of the property in the future from the appropriate administrative agency as the remedy for nuisance, waste, and negligence per se. The complaints seek money damages as relief under the common law theories of tort, breach of contract, and fraud. The landowners argues that these common law causes of action are without the jurisdiction of the Oil and Gas Board and that forcing its case before the Board would cause irreparable harm by foreclosing the landowners' right to recover monetary damages for the common law causes of action.
¶ 16. All of the landowners' causes of action rest upon two kinds of wrongful acts by Chevron. The landowners' fraud claims rest upon Chevron's alleged unlawful concealment of the dangers of TENORM contamination from the landowners, the public, and the Oil and Gas Board, primarily through Chevron's acts of misreporting its activities concerning TENORM to the Oil and Gas Board. The landowners' claims of assorted torts, breach of contract, nuisance, waste and negligence per se all rest upon Chevron's allegedly unlawful contamination of the landowners' property with various injurious materials.
¶ 17. The types of injurious materials which the landowners allege that Chevron unlawfully deposited on their property are encompassed by the definition of oil field exploration and production waste found at Mississippi Code Annotated section 53-1-3(t) (Rev.2003). Oil field exploration and production waste includes "[a]ny liquid, gaseous, solid, naturally occurring radioactive, or other substance(s), including but not limited to, any chemical, produced water, sludge, oil-water emulsion, oil field brine, waste oil, sediment, scale or other waste substance(s)," any equipment contaminated with such substances, or any land or structures contaminated with such substances, if such land or structures is associated with oil, gas, or mineral exploration, drilling or production in the state. Id.
The Oil and Gas Board has exclusive jurisdiction and authority to make reasonable rules, regulations, standards and orders and to issue permits, "to regulate the use, management, manufacture, production, ownership, investigation and noncommercial disposal of oil field exploration and production waste in order to prevent, eliminate *1107 or reduce waste by pollution to acceptable levels in order to protect the public health, safety, and the environment."[1] Miss.Code Ann. § 53-1-17(7) (Rev.2003). Noncommercial disposal of oil field exploration and production waste, over which the Board has exclusive jurisdiction, includes all storage, treatment, recovery, processing, disposal or acceptance of oil field exploration and production waste that is not from more than one generator or for a fee. Miss.Code Ann. § 53-1-3(u) (Rev. 2003); Miss Code Ann. § 17-17-3(e) (Rev. 2003); Miss.Code Ann. § 17-17-47(1) (Rev.2003). This is because storage, treatment, recovery, processing, disposal or acceptance of oil field exploration and production waste that is from more than one generator or for a fee is defined as commercial disposal of oil field exploration and production waste and is within the exclusive regulatory authority of the Mississippi Commission on Environmental Quality. Miss.Code Ann. § 17-17-3(e) (Rev.2003); Miss.Code Ann. § 17-17-47(2) (Rev.2003).
¶ 18. Any interested person has the right to have the Oil and Gas Board call a hearing in order to take action upon any matter within the Board's jurisdiction. Miss.Code Ann. § 53-1-29 (Rev.2003). Within thirty days of the conclusion of the hearing, the Board must take such action as it deems appropriate regarding the subject matter of the hearing. Id. The Board may assess penalties to persons in violation of the applicable statutes and Board regulations. Miss.Code Ann. § 53-1-47(b) (Rev.2003). Further, the Board may assess penalties to any person who has purposely evaded the applicable statutes or Board regulations by making false reports to the Board or concealing information from the Board. Miss.Code Ann. § 53-1-47(a)(i) (Rev.2003). A person in violation of the applicable statutes and regulations is subject to a fine of up to $10,000 per day for each day of such violation. Id. In assessing the penalty for a violation, the Board must consider factors including:
(i) The willfulness of the violation;
(ii) Any damage to water, land or other natural resources of the state or their users;
(iii) Any cost of restoration and abatement;
(iv) Any economic benefit to the violator as a result of noncompliance;
(v) The seriousness of the violation, including any harm to the environment and any harm to the health and safety of the public; and
(vi) Any prior violation by such violator.
Miss.Code Ann. § 53-1-17(d) (Rev.2003). The Board has the authority to enforce any penalties assessed. Miss.Code Ann. § 53-1-17(e) (Rev.2003). Additionally, the Board may sue to obtain injunctions to restrain violations or threatened violations. Miss.Code Ann. § 53-1-43(a) (Rev.2003). A private citizen who has notified the Board of an actual or threatened violation may bring suit for an injunction if the Board has failed to do so within ten days. Miss.Code Ann. § 53-1-43(b) (Rev.2003). The Board must be named as a party to the suit. Id.
¶ 19. The Board is limited to the above remedies. It does not have authority to adjudicate common law claims such as negligence, nuisance, trespass, breach *1108 of contract, strict liability and outrageous conduct. Howard v. Totalfina E & P USA, Inc., 899 So.2d 882, 888 (¶¶ 15-16) (Miss.2005). However, the question presented by the instant case is not whether the Board has the power to determine the landowners' common law claims as if it were a court of law and to award the damages which the landowners seek. Rather, the question is whether the Board's authority embraces the types of harm suffered by the landowners such that the landowners are precluded from seeking monetary and injunctive relief in the circuit court until they exhaust their remedies before the Board. Chevron, U.S.A., Inc., 844 So.2d at 1148 (¶ 11). A review of our recent precedent demonstrates that this question must be answered affirmatively.
¶ 20. In Donald v. Amoco Production Co., 735 So.2d 161, 164(¶ 1) (Miss.1999), Donald filed a complaint alleging that he had discovered oil field waste on his property that had been deposited there by the previous owner, an oil well maintenance business known as Davis Brothers. Donald had purchased the property from a bank at a foreclosure sale. Id. Donald sued the bank, Davis Brothers, and various oil companies which he alleged had contracted with Davis Brothers for disposal of the oil field waste. Id. at (¶ 2). Donald asserted seven causes of action against the oil companies including negligence, nuisance, trespass to land, breach of contract, waste, strict liability, and outrageous conduct. Id. The Circuit Court of Wayne County dismissed Donald's complaint for failure to state a claim upon which relief could be granted. M.R.C.P. 12(b)(6).
¶ 21. On appeal, the supreme court reversed, holding that all of Donald's causes of action against the oil companies should have survived dismissal with the exception of his negligence per se claim. Id. at 182-84 (¶¶ 80-91). This was because the negligence per se claim sought to establish the oil companies' liability based on their violation of Oil and Gas Board statutes, rules, and regulations. Id. at 176 (¶¶ 50-51). By suing in circuit court for the oil companies' violation of the Oil and Gas Board's rules and regulations, Donald had failed to give the Board an opportunity to take corrective action for the violations, such as requiring the oil companies to pay the costs of clean-up or restoration. Id. at 177(¶ 54). Therefore, the court held that Donald was required to exhaust the remedies before the Board before filing a private suit. Id. The supreme court remanded all of Donald's common law claims against the oil companies to the Wayne County Circuit Court.
¶ 22. At some point, Donald died. See Howard v. Totalfina E & P USA, Inc., 899 So.2d 882, 884(¶ 1) (Miss.2005). His daughter, Stephanie Howard, inherited the contaminated property and was substituted as plaintiff in the case. Id. While Howard's common law claims were pending in the circuit court, the supreme court decided Chevron U.S.A. Inc. v. Smith, 844 So.2d 1145 (Miss.2002). Howard, 899 So.2d at 884(¶ 2). As previously discussed, Chevron held that a plaintiff complaining of contamination must exhaust available remedies with the Oil and Gas Board prior to seeking damages and restoration in court. Chevron U.S.A., Inc., 844 So.2d at 1148(¶ 11). Relying on Chevron, the Wayne County Circuit Court dismissed Howard's common law claims for failure to exhaust administrative remedies. Howard, 899 So.2d at 884(¶ 2). Howard appealed from the dismissal, arguing that the circuit court had erroneously disregarded the supreme court's mandate in Donald remanding the common law claims for decision. Id. at 885.
*1109 ¶ 23. The Howard court held that the Wayne County Circuit Court had not disregarded the court's mandate in Donald but, instead, had misinterpreted Chevron to apply to Howard's case. The Howard court clarified the scope of Chevron's exhaustion requirement. The court held that Chevron applies to require exhaustion before the Oil and Gas Board when the contamination at issue resulted from oil and gas exploration activities conducted at the site pursuant to a mineral lease. Id. at (¶ 10). The court explained that, in Chevron, the plaintiff was a surface owner suing a mineral lessee and the surface owner was subject to a unit agreement contained in the lease agreement. Id. at (¶ 10). This arrangement implicated the jurisdiction of the Oil and Gas Board. Id. As the contaminated property in Howard was a dump site rather than a "working, operating oil field," the Board lacked jurisdiction. Id.
¶ 24. The Howard court further held that the contamination at issue was outside the jurisdiction of the Oil and Gas Board because it was not the result of noncommercial disposal of oil field exploration and production waste. Id. at (¶ 11); Miss.Code Ann. § 17-17-47(1) (Rev.2003). Rather, the contamination on the Howard property had resulted from commercial disposal of oil field exploration and production waste because it was accepted for disposal by Davis Brothers from numerous generators for a fee. Id. at (¶ 12); Miss.Code Ann. § 17-17-3(e) (Rev.2003). Commercial disposal of oil field exploration and production waste is not within the Board's jurisdiction. Id. at 887(¶ 11); Miss.Code Ann. § 17-17-47(2) (Rev.2003). The court observed that, in Chevron, the contamination at issue had resulted from Chevron's "contaminat[ion of] the groundwater directly through the production of oil and gas on the property." Id. at 886(¶ 11). Therefore, the contamination had resulted from noncommercial disposal of oil field exploration and production waste, which was within the exclusive authority of the Oil and Gas Board. Id. at 887(¶ 11); Miss.Code Ann. § 17-17-47(1) (Rev.2003).
¶ 25. Howard makes clear that Chevron applies to bar the judicial resolution of the common law claims in the instant case until such time when the landowners have exhausted their remedies before the Board. As in Chevron, the contamination complained of by the landowners was deposited on their property in the course of oil and gas exploration and production activities pursuant to a mineral lease. Further, the contamination resulted from Chevron's noncommercial disposal of oil field exploration and production waste. This is because the contaminants of which the landowners complain are embraced by the definition of oil field exploration and production waste, and because the contamination resulted directly from oil field exploration and production activities on the property, not via commercial disposition. Miss.Code Ann. § 53-1-3(t) (Rev.2003); Howard, 899 So.2d at 886(¶ 11). The Oil and Gas Board has exclusive authority over noncommercial disposal of oil field exploration and production waste; therefore, the landowners must assert their claims based on the contamination before the Board before suing privately. Miss. Code Ann. § 17-17-47(1) (Rev.2003).
¶ 26. Further, the jurisdiction of the Board extends to the landowners' fraud claims asserting that Chevron misled the landowners, the public, and the Oil and Gas Board. This is because judicial resolution of those claims would require a jury to determine whether Chevron misrepresented information to the Board in violation of the Board's reporting requirements. Before the Board, such violations would subject Chevron to penalties for its purposeful evasion of the applicable statutes *1110 and rules by misreporting or concealment of information from the Board. Miss.Code Ann. § 53-1-47(a)(i) (Rev.2003). The Board must be given the chance to investigate and to penalize Chevron for any false reporting that occurred. See Donald, 735 So.2d at 177(¶ 54).
¶ 27. Our conclusion that the landowners must exhaust the available remedies before the Oil and Gas Board is bolstered by a consideration of the factors articulated in Campbell and Weems. The jurisdiction of the Oil and Gas Board is not in doubt. The Oil and Gas Board possesses a highly specialized understanding of the complex environmental issues posed by this case, of the statutes, rules and regulations governing waste disposal, of the business practices of the oil and gas industry, and of the relationship between a surface owner and a mineral lessee. Thus, the Board is far better suited to efficiently determine the questions posed by this case than is a circuit court. Most vitally, as emphasized in Chevron, the Board has the power to order clean-up and restoration of the contaminated property. Chevron U.S.A., Inc., 844 So.2d at 1148(¶ 14). No court can order a party prevailing in a contamination case to expend its damage award on restoration. Id. Therefore, a trial does "nothing to protect the citizens of Mississippi" from the dangers of contamination, and only serves to "allow a windfall to plaintiffs" who are not then obligated to clean up their property. Id. Further, a requirement that plaintiffs bring such claims to the attention of the agency before seeking judicial relief will "alert the Board to possible wide-reaching violations" and permit the Board to take corrective action. Id.
¶ 28. The landowners in this case have attempted to distinguish Chevron by pointing out that, in Chevron, the plaintiffs refused to allow clean-up of their property when it was offered by Chevron. The landowners aver that, while they are presently seeking money damages, they might seek restoration from the Board at a later time. This averment falls far short of a guarantee that the land will ever be decontaminated; had the landowners wished to assure this Court of their beneficent intentions, they would have sought a hearing before the Board. It would contravene the public interest, as articulated in Chevron, for this Court to allow the landowners to pursue a monetary award without requiring them to first present their allegations to the Oil and Gas Board to secure decontamination of the property. We affirm the decision of the circuit court finding that the court could not adjudicate the landowners' claims until they exhausted the available remedies before the Oil and Gas Board.

B. Whether the landowners' monetary damage claims should be stayed pending Board resolution.
¶ 29. Since we hold that the landowners must exhaust available remedies before the Oil and Gas Board prior to bringing a private action, we address the landowners' alternative argument that the circuit court should have stayed their common law claims pending final action by the Board. The landowners argue that their common law claims should be stayed because the prescriptive periods governing these actions may expire before the Board takes final action.
¶ 30. The landowners' argument is inapplicable to the Town of Bolton's claims because, in civil cases, statutes of limitations do not run against the state or its subdivisions. Miss.Code Ann. § 15-1-51 (Rev.2003); State ex rel. Pittman v. Ladner, 512 So.2d 1271, 1278 (Miss.1987). Therefore, only the claims of McMullan and McRaney could be foreclosed by the *1111 running of the statutes of limitations while they pursue administrative remedies. Thus, our consideration of this argument is limited to determining whether any of McMullan and McRaney's claims should have been stayed.
¶ 31. As support for their request for a stay, McMullan and McRaney cite Von Hoffburg v. Alexander, 615 F.2d 633 (5th Cir.1980). In Von Hoffburg, the Fifth Circuit found that Von Hoffburg had failed to exhaust administrative remedies before the Army Board for Correction of Military Records (ABCMR) before bringing an action in the district court based upon her honorable discharge from the Army for homosexuality. Id. at 640. The district court had dismissed all of Von Hoffburg's claims without prejudice. Id. at 634. Von Hoffburg argued that the exhaustion doctrine should not apply because her complaint included a request for money damages, which the ABCMR lacked the power to award. Id. at 640.
¶ 32. The court rejected Von Hoffburg's argument that her request for money damages was sufficient to defeat the exhaustion requirement, stating that the "inclusion of a monetary damage claim should not deprive the Army of a chance to review its own rules and regulations prior to judicial intervention," and "[w]here the relief claimed is the only factor that militates against the application of the exhaustion requirement, the complaint should be carefully scrutinized to ensure that the claim for relief was not asserted for the sole purpose of avoiding the exhaustion rule." Id. at 641. However, the court hesitated to affirm the dismissal of Von Hoffburg's claim for money damages for fear of foreclosing her opportunity to seek review of the claim after completion of proceedings before ABCMR. Id. The court found that Von Hoffburg's claim for money damages should have been stayed rather than dismissed without prejudice "to avoid the potential bar of a statute of limitations." Id.
¶ 33. We find the reasoning employed in Von Hoffburg to be sound and see no reason to reject it. By stating that surface owners seeking clean up of byproduct pollution must first seek relief before the Oil and Gas Board before a court can assess the appropriate measure of damages, Chevron contemplated that the surface owners may instigate a private suit for monetary damages after the conclusion of proceedings before the Board. Chevron U.S.A., Inc., 844 So.2d at 1148(¶ 11). As in Von Hoffburg, the Oil and Gas Board lacks authority to award monetary damages for lost profits or the other damages claimed by McMullan and McRaney. Howard, 899 So.2d at 888 (¶ 15-¶ 16).
¶ 34. Chevron argues that a stay of McMullan and McRaney's claims would be unnecessary because the claims were dismissed for a defect in form and, therefore, Mississippi Code Annotated § 15-1-69 (Rev.2003) would operate to toll the applicable statutes of limitations for one year. This argument against a stay is unpersuasive. A mere one-year reprieve from the running of the limitations period would not assure that the claims would survive the conclusion of a potentially lengthy agency proceeding. We find that McMullan and McRaney's claims for money damages based upon their common law theories should have been stayed pending their exhaustion of administrative remedies. We reverse and remand for the circuit court to vacate its order dismissing McMullan and McRaney's common law claims for money damages and for entry of an order staying these claims pending final action by the Oil and Gas Board. We otherwise affirm the dismissal of McMullan and McRaney's claims and of the Town's claims.
¶ 35. THE JUDGMENT OF THE CIRCUIT COURT FOR THE SECOND *1112 JUDICIAL DISTRICT OF HINDS COUNTY IN CASE NUMBER 2004-CA-00865-COA IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT. THE JUDGMENT OF THE CIRCUIT COURT FOR THE SECOND JUDICIAL DISTRICT OF HINDS COUNTY IN CASE NUMBER 2004-CA-00867-COA IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED IN EQUAL PARTS TO THE APPELLANTS AND THE APPELLEES.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, BARNES, AND ISHEE, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.
NOTES
[1] While § 53-1-17(7) confers exclusive jurisdiction upon the Board to promulgate rules for the control of oil field exploration and production waste present in an oil field, under § 53-1-17(3)(a), the Board must gain the approval of the Mississippi Commission on Environmental Quality before promulgating rules requiring the disposal of "waste products" defined therein. Boyles v. Miss. State Oil & Gas Bd., 794 So.2d 149, 159(¶ 33) (Miss.2001).