# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-IA-01442-SCT

*PETRO HARVESTER OIL & GAS CO., LLC,
PETRO HARVESTER OPERATING COMPANY,
LLC, COMSTOCK OIL & GAS, LP, JERRY
HUDDLESTON, GARY McADAMS, CHAMPION
OILFIELD SERVICE, LLC, BOOTS SMITH
OILFIELD SERVICES, LLC, ROCKALL ENERGY,
LLC, AND DEEPWELL ENERGY SERVICES, LLC*

*v.*

*TAY BAUCUM AND DEIDRA BAUCUM*


| | |
|---|---|
| DATE OF JUDGMENT: | 09/03/2019 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| TRIAL COURT ATTORNEYS: | PAUL MANION ANDERSON |
| | SAMUEL STEVEN McHARD |
| | MICHAEL D. SIMMONS |
| | DOUGLAS EGAN ADAMS, II |
| | RYAN JEFFREY MITCHELL |
| | DAVID WAYNE BARIA |
| | JUSTIN RONALD GLENN |
| | WILLIAM F. BLAIR |
| | JACOB ARTHUR BRADLEY |
| | NORMAN ELVIN BAILEY, JR. |
| | R. DAVID KAUFMAN |
| | ROBERT D. GHOLSON |
| | BRETT WOODS ROBINSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | R. DAVID KAUFMAN |
| | BRETT WOODS ROBINSON |
| | RYAN JEFFREY MITCHELL |
| | WILLIAM F. BLAIR |
| | NORMAN ELVIN BAILEY, JR. |
| | JACOB ARTHUR BRADLEY |

ATTORNEYS FOR APPELLEES:      MICHAEL D. SIMMONS
     PAUL MANION ANDERSON
     WALKER (BILL) JONES, III
     DAVID WAYNE BARIA
     JUSTIN RONALD GLENN
     SAMUEL STEVEN McHARD
     JESSE MITCHELL, III
     DOUGLAS EGAN ADAMS, II

NATURE OF THE CASE:      CIVIL - PERSONAL INJURY
DISPOSITION:      AFFIRMED IN PART; REVERSED AND
     REMANDED IN PART - 08/05/2021

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**CONSOLIDATED WITH**

**NO. 2019-IA-01477-SCT**

*TAY BAUCUM AND DEIDRA BAUCUM*

*v.*

*PETRO HARVESTER OIL & GAS CO., LLC,
PETRO HARVESTER OPERATING COMPANY,
LLC, CHAMPION OILFIELD SERVICE, LLC,
BOOTS SMITH OILFIELD SERVICES, LLC,
COMSTOCK OIL & GAS, LP, JERRY
HUDDLESTON, GARY McADAMS, ROCKALL
ENERGY, LLC, AND DEEPWELL ENERGY
SERVICES, LLC*

DATE OF JUDGMENT:      09/03/2019
TRIAL JUDGE:      HON. DAL WILLIAMSON
COURT FROM WHICH APPEALED:      JONES COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:      WALKER (BILL) JONES, III
     DAVID WAYNE BARIA
     MICHAEL D. SIMMONS
     SAMUEL STEVEN McHARD
     JESSE MITCHELL, III
     PAUL MANION ANDERSON
     DOUGLAS EGAN ADAMS, II
     JUSTIN RONALD GLENN

ATTORNEY FOR APPELLEES:       WILLIAM F. BLAIR
                              R. DAVID KAUFMAN
                              BRETT WOODS ROBINSON
                              RYAN JEFFREY MITCHELL
                              NORMAN ELVIN BAILEY
                              JACOB ARTHUR BRADLEY

NATURE OF THE CASE;           CIVIL - PERSONAL INJURY
DISPOSITION:                  AFFIRMED IN PART; REVERSED AND
                              REMANDED IN PART- 08/05/2021

MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The crux of this interlocutory appeal is whether Plaintiffs, complaining of personal injury and property damage as a result of the alleged improper use of an oil-disposal well, must exhaust their administrative remedies before the Mississippi State Oil and Gas Board (MSOGB) prior to proceeding on their common-law claims in the circuit court. Because the MSOGB can provide no adequate remedy for the Baucums' personal-injury and property-damage claims, we find that the Baucums are not required to exhaust administrative remedies before proceeding in the circuit court.

## FACTS AND PROCEDURAL HISTORY

¶2.     Tay Baucum and Deidra Baucum (the Baucums) each own a parcel of real property in Jones County.[1] The Baucums' properties neighbor real property owned and controlled by Petro Harvester Oil & Gas Co., namely the Laurel Oil Field. On the Laurel Oil Field is a Class II disposal well. The disposal well was created "for the downhole injection and

---

[1]Tay and Deidra are sisters-in-law.

disposal of various drilling and produced fluids brought to the surface in association with the drilling, completion, recompletion and/or reworking of wells" within the Laurel Oil Field. Petro Harvester uses the disposal well for the noncommercial disposal of waste.[2]

¶3.    On April 4, 2014, the Baucums filed a complaint against Petro Harvester, Comstock Oil & Gas, Jerry Huddleston, Gary McAdams, Champion Oilfield Service, LLC, Boots Smith Oil Field Services, LLC, Rockall Energy, LLC, and Deepwell Energy Services, LLC, (collectively, "Petro Harvester") in the Circuit Court of Jones County for damages to real property. The Baucums claimed that Petro Harvester's activities had resulted in trespass, public and private nuisance, and negligence. The complaint alleged that Petro Harvester had "[f]or several decades . . . both in concert and separately . . . engaged in systematic and illegal dumping and disposal of oil field petroleum waste and associated petroleum drilling waste both on the plaintiffs['] property, on the adjoining property owned or controlled by the defendants, and in the subterranean ground and aquifer." As a result, the Baucums stated that their properties had become unusable for anything other than waste disposal.

¶4.    Prior to the filing of the Baucums' complaint, on March 3, 2014, one of the Baucums' relations requested that the MSOGB, the Environmental Protection Agency (EPA), and the Mississippi Department of Environmental Quality (DEQ) examine the areas around the properties for pollution and/or naturally occurring radioactive material (NORM). Jerry Huddleston, the operations manager for Petro Harvester, filed an affidavit that stated that

---

[2]The commercial disposal of oil-field exploration-and-production waste is within the regulatory authority of the Mississippi Commission on Environmental Quality. Miss. Code Ann. § 17-17-47(2) (Rev. 2012).

4

those "representatives advised me that they found no NORM violations. To date, the Board, EPA, and DEQ have not issued any environmental citations."

¶5. The Baucums filed a first amended complaint on June 9, 2014, that added an additional claim for "[i]njunctive relief requiring the defendants to cease their trespass on plaintiffs' properties, including immediate removal of the toxic substances deposited by defendant."

¶6. On June 17, 2014, Petro Harvester filed a motion to dismiss/stay and argued that the MSOGB maintained jurisdiction over Petro Harvester's disposal of produced fluids and any alleged pollution caused by the same.[3] Because the Baucums alleged that Petro Harvester had polluted their properties during the disposal process, Petro Harvester asserted that the Baucums were required to exhaust their administrative remedies before the MSOGB prior to pursing civil action and requested that the circuit court dismiss or stay the action until the Baucums exhausted their administrative remedies.

¶7. In response, the Baucums argued that they were not required to file a complaint with the MSOGB for common-law causes of action because the MSOGB had no authority on common-law claims and, therefore, no adequate remedy existed.

¶8. On August 18, 2014, the circuit court held a hearing on the motion to dismiss/stay. At the hearing, the parties agreed that the case should proceed on a parallel track in both the circuit court and before the MSOGB. The following discussion occurred:

---

[3]Boots Smith and Champion joined the motion to dismiss. Comstock additionally requested that the circuit court dismiss the action until the Baucums exhausted their administrative remedies or, in the alternative, dismiss all claims against Comstock because such claims were barred by the three-year statute of limitations.

5

The Court: The point I was trying to get to where if this lawsuit would go to its end like the *Chevron*[4] case did, then it's over. But in the meantime, if you go through the administrative, exhaust administrative path, then, you know, when you got to your lawsuit, which they can't keep you from getting to this common law tort case, what's wrong with exhausting your administrative so we get that out of the way?

I understand that the Oil and Gas Board doesn't have any jurisdiction over common law issues and tort, but they do have a responsibility to make sure that all of these activities are done in accordance with the rules and regulations and statutes and case law and everything that's been decided before . . . . I always understood that once the Oil and Gas Board made the decision . . . you went to the Oil and Gas Board and they gave you a hearing and made a decision. And then if the decision was contrary to the claimant's complaint, then they go to court and file a common law action. They don't make any decision about the facts of the case as far as the common law or the statutory involvement in your tort case, but that was just the way of exhausting that remedy that you have with the Oil and Gas Board.

Plaintiffs' Counsel: Your Honor, may I suggest a parallel track then because I think what we're talking about is us filing a negligence per se claim and the permit related claims or complaints before the Oil and Gas Board? We all, at least Your Honor seems to agree with the plaintiffs, that the Oil and Gas Board can't touch nor provide any remedy for the common law claims. We would like to engage in a parallel track, commit to Your Honor that we'll go to the Oil and Gas Board. We've already been there twice. They've been done here twice. Go to the Oil and Gas Board —

The Court: Nobody has anything. That's why I asked the question about the inspectors. Nobody has showed me anything about where they have or have not been or what their findings were. I mean, they've got to make a report. I've sat in on the Oil and Gas Board many many times for many reasons, some personal and some otherwise. I know they make a decision. I didn't know, that's new to me, that you could actually appeal. What would you appeal it for?

Counsel for Petro Harvester and Comstock: Abuse of discretion, Your Honor.

The Court: Okay. That has nothing to do with the tort then.

---

[4]***Chevron U.S.A., Inc. v. Smith***, 844 So. 2d 1145 (Miss. 2002).

Counsel for Petro Harvester and Comstock: No, sir. It won't affect the claims. And as the cases say, we stay these cases. And the Oil and Gas Board proceedings quickly. It's not a drawn out years and years deal. It happens fast.

The Court: He says he's willing to do that with parallel tracking. Let's do that.

Plaintiffs' Counsel: Yes, sir, Your Honor. I'll prepare the order.

The Court: Does that suit you?

Counsel for Petro Harvester and Comstock: Your Honor, I'd like to go to the Board first and finish that and get that done.

The Court: All right. Well, whatever y'all decide to do let me know.

Plaintiffs' Counsel: We need discovery, Your Honor, even to go to the Board we need discovery.

The Court: All right. All right.

Plaintiffs' Counsel: I'll submit an order.

No order was entered following the bench ruling.[5]

¶9.     Almost two years later, on August 8, 2016, Deidra filed a second amended complaint that added personal-injury claims and alleged that Petro Harvester's actions had resulted in the development of cancer in Deidra.[6]

¶10.    On October 21, 2016, Deidra filed a petition with the MSOGB and asked the MSOGB

---

[5]Apparently, the parties conferred on the issue but had ultimately submitted competing proposed orders. Petro Harvester argued that the circuit court had ordered the Baucums to exhaust their administrative remedies before proceeding in the circuit court. The Baucums contended that the circuit court had agreed to a parallel track and, therefore, had ordered that they proceed on their common-law claims in the circuit court and on their negligence per se claims before the MSOGB. The circuit court did not enter either order.

[6]Neither Tay nor her attorneys signed the second amended complaint. Deidra stated that she had hired the Mitchell Law Firm, PLLC, to represent her and that the Mitchell Law Firm did not represent Tay.

to ensure that Petro Harvester complied with any rules and regulations, to force Petro Harvester to clean up the pollution at the well site and on her property, and to enjoin Petro Harvester from further activities at the well site.[7] Deidra stated that her petition contained only negligence per se claims.

¶11. On June 30, 2017, the Baucums moved for a status conference in the circuit court. In response, Petro Harvester requested that the status conference in the circuit court be held in abeyance pending the resolution of the MSOGB proceeding.

¶12. On August 16, 2017, Deidra voluntarily withdrew her petition from the MSOGB, and the MSOGB dismissed the petition without prejudice.[8]

¶13. The circuit court held a hearing on the motion for status conference on September 18, 2017. Petro Harvester admitted that any determination by the MSOGB likely would have a preclusive effect on what a jury could determine in a tort case. Counsel for Deidra stated that the petition before the MSOGB was dismissed mainly over concerns of res judicata and because discovery in front the MSOGB would be severely limited.

¶14. On October 11, 2017, the circuit court ruled that the

> Plaintiffs' claims stemming from alleged contamination from unpermitted, unlined, seeping, leaking, and overflowing holding ponds and/or pits at the well site within the approved unit are hereby dismissed without prejudice with instructions to the Plaintiffs to first exhaust their administrative remedies before the Oil and Gas Board on these claims before suing privately.
>
> The Court further rules now that any claims of the Plaintiffs for alleged

---

[7]Tay Baucum did not file a petition before the MSOGB.

[8]Deidra asserted that she voluntarily withdrew her petition after it became clear that Petro Harvester intended to try the entire case before the MSOGB.

dumping, burial, and storing of oilfield exploration and production wastes on the Plaintiffs' property are hereby dismissed without prejudice with instructions to the Plaintiffs to assert such claims first before the Mississippi Commission on Environmental Quality before suing privately.

Pursuant to **Town of Bolton**[9], the Plaintiffs' claims for monetary damages based upon their common law theories are hereby stayed pending their exhaustion of administrative remedies.

The circuit court additionally suggested that the Baucums file a bill of discovery in the chancery court to obtain discovery for the MSOGB proceeding.

¶15.    On February 2, 2018, the Baucums filed a bill of discovery against Petro Harvester in the Jones County Chancery Court and sought discovery related to Petro Harvester's alleged pollution and contamination. The chancery court granted limited discovery and ruled that the Baucums could subpoena records pertaining to the pollutants, including reports or testing that would indicate the presence or absence of pollutants, and could subpoena photographs of the well site that might show the existence of pollutants, etc. The Baucums obtained documents through the limited discovery allowed that could be considered favorable to their case.

¶16.    The circuit court denied the Baucums' first motion to lift stay. The Baucums then filed a petition for interlocutory appeal, which the Baucums sought to withdraw on February 7, 2018, the same date that this Court denied the petition.

¶17.    The Baucums filed a second motion to lift stay on June 18, 2019, and argued that, should the motion be granted, the Baucums would immediately amend their complaint to remove the negligence per se claim. The Baucums argued that the negligence per se claim

[9]**Town of Bolton v. Chevron Oil Co.**, 919 So. 2d 1101 (Miss. Ct. App. 2005)

was the only claim that implicated the MSOGB jurisdiction.

¶18. The circuit court found that the motion should be granted in part and denied in part. The circuit court lifted the stay on the Baucums personal-injury claims but ordered that the Baucums' property-damage claims remain stayed pending exhaustion of administrative remedies before the MSOGB.

¶19. Deidra then filed her third amended complaint, and Tay filed her second amended complaint, in the circuit court that omitted the negligence per se claims.

¶20. This Court granted both Petro Harvester's and the Baucums' petitions for interlocutory appeal on January 15, 2020. This Court then consolidated the two appeals.

¶21. Petro Harvester filed an Emergency Joint Motion to Stay Pending Ruling on Petition for Interlocutory Appeal and requested that further proceedings in the circuit court be stayed pending the resolution of the interlocutory appeals in this Court. The circuit court entered an agreed order staying all proceedings pending this Court's resolution of the petitions for interlocutory appeal.

## ISSUES

¶22. Because the following issues are interrelated, they are addressed together:

Whether the circuit court erred by lifting the stay on the Baucums' personal injury claims.

Whether the circuit court erred by finding that the Baucums must exhaust their administrative remedies prior to proceeding in the circuit court on their property-damage claims.

## DISCUSSION

¶23. "Jurisdictional issues are reviewed by this Court de novo." ***Jones v. Billy***, 798 So. 2d

10

1238, 1239 (Miss. 2001) (citing *Harrison v. Boyd Miss., Inc.*, 700 So. 2d 247, 248 (Miss. 1997)). Because the MSOGB could provide no remedy for personal-injury claims, the circuit court lifted the stay with regard to the Baucums' "personal injury claims, emotional distress, mental anguish and hedonic damages as well as medical expenses, damages for disfigurement, medical monitoring." The circuit court declined to lift the stay on property damage, diminution of value, and loss of quiet use and enjoyment of property and found that the Baucums must first exhaust their administrative remedies before proceeding on those claims.

¶24.    This Court previously has found that "[i]n general, a complainant must exhaust the administrative remedies available to him before resorting to the courts for resolution of his dispute." *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 176 (Miss. 1999) (citing *State v. Beebe*, 687 So. 2d 702, 704 (Miss. 1996)). "However, where no adequate administrative remedy is provided, the exhaustion doctrine is not applicable." *Id.* (citing *Miss. Dep't of Env't Quality v. Weems*, 653 So. 2d 266, 277 (Miss. 1995)).

¶25.    Petro Harvester argues that the circuit court erred by creating a personal-injury exception to the MSOGB exhaustion requirement. It contends that under Mississippi Code Section 53-1-17(7), the MSOGB has exclusive jurisdiction over the disposal of noncommercial oil field exploration and production waste. Miss. Code Ann. § 53-1-17(7) (Rev. 2016). Therefore, Petro Harvester argues that the MSOGB has exclusive jurisdiction over the subject matter of all of the Baucums' claims.

¶26.    In contrast, the Baucums assert that "[t]he [MSOGB] is a creature of the legislature

11

and, of course, has no authority other than that vested in it by statute." ***Transcon. Gas Pipeline Corp. v. State Oil and Gas Bd. of Miss.***, 457 So. 2d 1298, 1325 (Miss. 1984) (citing ***Masonite Corp. v. State Oil and Gas Bd.***, 240 So. 2d 446, 449 (Miss. 1970)), *rev'd on other grounds by* ***Transcon. Gas Pipe Line Corp. v. State Oil and Gas Bd. of Miss.***, 474 U.S. 409, 106 S. Ct. 709, 88 L. Ed. 2d 732 (1986). Accordingly, the Baucums contend that the MSOGB does not have jurisdiction to determine common-law claims.

¶27.    The relevant statutory language is as follows. Pursuant to Mississippi Code Section 53-1-17(1), the MSOGB "shall have jurisdiction and authority over all persons and property necessary to enforce effectively the provisions of this chapter and all other laws relating to the conservation of oil and gas." Miss. Code Ann. § 53-1-17(1) (Rev. 2016). Section 53-1-17(2) provides that the MSOGB "shall have the authority, and it shall be its duty, to make such inquiries as it may think proper to determine whether or not waste, over which it has jurisdiction, exists or is imminent." Miss. Code Ann. § 53-1-17(2) (Rev. 2016).

¶28.    It is also the MSOGB's duty to

> prevent the pollution of freshwater supplies by oil, gas or saltwater; and generally to prevent waste as herein defined. The duty is hereby imposed upon the State Oil and Gas Board to make suitable and adequate rules and regulations, subject to the approval of the Mississippi Commission on Environmental Quality, requiring the disposal of waste products such as, but not limited to, mud, acids, saltwater or any corrosive products brought to the surface from any oil, gas or condensate well in this state, to prevent seepage, overflow or damage and injury to the topsoil or surface.

Miss. Code Ann. § 53-1-17(3)(a) (Rev. 2016). The Legislature gave the MSOGB the

> exclusive jurisdiction and authority, and it shall be its duty, to make, after notice and hearing as hereinafter provided, such reasonable rules, regulations, standards and orders, and to issue such permits as may be necessary, to

12

regulate the use, management, manufacture, production, ownership, investigation and noncommercial disposal of oil field exploration and production waste in order to prevent, eliminate or reduce waste by pollution to acceptable levels in order to protect the public health, safety and the environment.

Miss. Code Ann. § 53-1-17(7) (Rev. 2016). Lastly, Mississippi Code Section 53-1-3(t) states that

"Oil field exploration and production wastes" shall mean:

(i) Any liquid, gaseous, solid, naturally occurring radioactive, or other substance(s), including but not limited to, any chemical, produced water, sludge, oil-water emulsion, oil field brine, waste oil, sediment, scale or other waste substance(s);

(ii) Any equipment or any other related apparatus containing or contaminated with such substance(s) as set forth in subparagraph (i) above; or

(iii) Any land or structures containing or contaminated with such substance(s) as set forth in subparagraph (i) above, which is associated with, produced by, or used in the exploration, drilling, and/or production of oil, gas or other minerals within the territorial limits of the State of Mississippi.

Miss. Code Ann. § 53-1-3(t) (Rev. 2016). Petro Harvester argues that the MSOGB has jurisdiction over the subject matter of each of the Baucums' claims through the plain language of the relevant statutes.

¶29.   The Baucums alleged in their complaint, inter alia, that Petro Harvester "released, discharged, disposed of, deposited, injected, dumped, buried, stored, or placed industrial and oil field wastes and materials and other toxic substances, including without limitation harmful toxic chemicals, heavy metals, saltwater, brine, produced water, [NORM] and/or other unknown substances ("Liquid Toxic Waste.")." Pursuant to statute, the MSOGB has jurisdiction over the noncommercial disposal of oil-field waste. Yet, while the disposal of

13

oil field waste is a regulated activity, that is not to say that the MSOGB has unlimited jurisdiction over all issues involving oil-field waste.

¶30.    Because the MSOGB can provide no adequate remedy and because no nexus exists between the Baucums and the MSOGB, we find that the MSOGB lacks authority over common-law claims. Accordingly, the Baucums are not required to exhaust their administrative remedies before proceeding on their common-law claims in the circuit court.

¶31.    The parties, and circuit court, focused on four cases. In *Donald*, the plaintiff purchased a parcel of land that previously had been owned by a business that provided oil-well maintenance services to oil companies. *Donald*, 735 So. 2d at 164. Several years later, the plaintiff discovered that the company had been disposing of oil-field waste on the property. *Id.* The plaintiff filed a complaint alleging negligent misrepresentation and "negligence, nuisance, trespass to land, breach of contract, waste, strict liability, and outrageous conduct." *Id.* As to the plaintiff's nuisance claim, this Court found that an issue of causation existed that "should be subject to discovery and further proceedings in the lower court." *Id.* at 175. The plaintiff had alleged negligence per se because his property had been damaged "from violations of oil and gas regulations." *Id.* at 176. This Court found that the plaintiff's negligence per se claim had been properly dismissed because an adequate administrative remedy existed. *Id.* For example, "[t]he Board could have penalized the [defendants] and required them all to pay the costs of clean-up, restoration, etc." *Id.* at 177. Therefore, the plaintiff was required to exhaust his administrative remedies as to the negligence per se claim before filing a private suit. *Id.*

14

¶32. This Court then decided *Chevron*, in which the plaintiffs had obtained a more than $2 million judgment in an oil-field contamination case. *Chevron*, 844 So. 2d at 1146. Chevron had acquired a mineral lease to an oil field and had eventually built a saltwater facility on the field. *Id.* at 1146-47. The plaintiffs later purchased the surface rights to a portion of the field. *Id.* at 1147. Approximately fifteen years after the plaintiffs had purchased surface rights, "government testing showed that the drinking water of many of the residents had been polluted by Chevron's operations." *Id.* The plaintiffs sought to have the oil producers clean up the pollution. *Id.* at 1147. This Court stated that *Donald* "sets a binding precedent in cases where plaintiffs seek to have oil producers clean up byproduct pollution." *Id.* at 1147-48. This Court found that the plaintiffs "were required under our precedents to first seek restoration of their property from the [MSOGB] before a trial court could consider the issue and possibly assess an appropriate measure of damages." *Id.* at 1146. It stated, "[t]his Court cannot allow a private landowner to pursue restoration of his or her land in the courts of this State by sidestepping a very vital and useful agency that could help protect the average Mississippian from the dangers of NORM pollution." *Id.* at 1148. Accordingly, the Court reversed the judgment and found that the plaintiffs were required to first exhaust administrative remedies before seeking relief in the circuit court. *Id.*

¶33. In the meantime, the plaintiff in *Donald* passed away, and his daughter inherited his property. *Howard v. TotalFina E & P USA, Inc.*, 899 So. 2d 882, 884 (Miss. 2005). His daughter filed a second appeal. *Id.* Based on the *Chevron* decision, the trial court had dismissed "Howard's common law claims of negligence, nuisance, trespass, strict liability,

15

and breach of contract[.]" *Id.* at 885. Howard argued that the MSOGB lacked jurisdiction over her common-law claims and that she was not required to exhaust administrative remedies before filing her civil suit. *Id.* at 885-86. Howard asserted that her case could be distinguished from *Chevron* because no mineral lease had been issued, and no oil-and-gas drilling or production had taken place on the property. *Id.* at 886. Additionally, the waste at issue was commercial waste instead of noncommercial disposal of waste. *Id.* This Court found that *Chevron* did not apply because the Donald property had been contaminated through commercial disposal activities of which the MSOGB had no jurisdiction. *Id.* at 887.

¶34. Additionally, this Court discussed the issue of exhaustion of administrative remedies and "conclusively f[ound] that the circuit judge erred by dismissing the case at bar for Howard's failure to exhaust administrative remedies." *Id.* It reiterated that if no adequate administrative remedy is provided, the doctrine of exhaustion was not applicable. *Id.* at 888. The Court stated,

> Again, the Donald property concerns commercial surface waste and does not concern the noncommercial groundwater pollution at issue on the Smith property in the *Chevron* case. Finally, any claims that may have been subject to the authority of the Board (the negligence per se claims involved in the first appeal) have already been dismissed. The only claims that remain are those based on common law, over which this Court finds that the Board has no authority.
>
> Therefore, since the remaining claims—negligence, nuisance, trespass, breach of contract, strict liability, and outrageous conduct—do not specifically relate to an administrative remedy, this Court finds that they were improperly dismissed without prejudice by the circuit judge.

*Id.* at 888.

¶35. Also in 2005, the Court of Appeals considered a case in which landowners had leased

16

properties to Chevron for oil and/or gas exploration. *Town of Bolton*, 919 So. 2d at 1103. The landowners alleged that Chevron had caused their properties to become contaminated with various harmful substances and that Chevron had breached its lease agreements by contaminating the properties. *Id.* The landowners asserted common-law theories of recovery as well as nuisance per se claims. *Id.* The trial court dismissed the landowners' complaints for failure to exhaust administrative remedies. *Id.* at 1104. The Court of Appeals, citing *Chevron*, found that "landowners cannot seek judicial relief for any of their claims until they exhaust their available remedies before the [MSOGB]." *Id.* at 1105. The landowners argued that *Chevron* did not apply because they did not request that Chevron clean the contaminated properties. *Id.* at 1106. The Court of Appeals noted that the MSOGB did "not have authority to adjudicate common law claims . . . ." *Id.* at 1107. However, the Court of Appeals stated that

> the question presented by the instant case is not whether the Board has the power to determine the landowners' common law claims as if it were a court of law and to award the damages which the landowners seek. Rather, the question is whether the Board's authority embraces the types of harm suffered by the landowners such that the landowners are precluded from seeking monetary and injunctive relief in the circuit court until they exhaust their remedies before the Board.

*Id.* at 1108 (citation omitted). Finally, the Court of Appeals found that the trial court erred by dismissing the landowners' common-law claims for money damages and remanded that issue to the circuit court for entry of an order staying those claims pending the exhaustion of administrative remedies. *Id.* at 1111.

¶36.    The Baucums argue that their cases can be distinguished from the previously decided

17

cases. In those cases, the plaintiffs each had a jurisdictional nexus with the MSOGB through a mineral or surface lease, a unit agreement, or through oil and gas exploration. Here, the Baucums have not entered into a mineral lease or surface lease, have not consented to or become a party to a unit agreement, have not allowed oil-and-gas exploration or production on their property, and have not taken any action that would place them on actual or constructive notice that they were consenting to MSOGB jurisdiction. Further, the Baucums are not basing any claims from violations of MSOGB rules or regulations and have omitted their negligence per se claims. The Baucums also are not alleging any claim based on any pollution of the well itself. Rather, the Baucums state that their claims are based on the pollution escaping the well site and contaminating their properties. Therefore, the Baucums state that they have not consented to the jurisdiction of the MSOGB in any way.

¶37.    Petro Harvester claims that the circuit court erred by finding that the MSOGB lacked jurisdiction over the Baucums' personal-injury claims. It argues that the circuit court created a "special exception" to the exhaustion rule. But, as previously stated, the exhaustion doctrine does not apply when no adequate administrative remedy is provided. *Donald*, 735 So. 2d at 176. The Court in *Donald* held that the administrative remedy was adequate for the plaintiff's negligence per se claims because the MSOGB was authorized to penalize the defendants and was able to require the defendants to pay for cleanup and restoration.

¶38.    Here, however, the MSOGB cannot provide an adequate remedy for the Baucums' common-law claims. The MSOGB has the authority to access and enforce penalties and may bring suits to restrain a person from violating statutes with respect to the conservation of oil

18

and gas. *See* Miss. Code Ann. § 53-1-47 (Rev. 2016); Miss. Code Ann. § 53-1-43 (Rev. 2016). But the MSOGB is limited to those remedies. The MSOGB could not award the Baucums damages for their property-damage claims or for Deidra's personal-injury claims. As stated in **Howard**, the Baucums' claims "do not specifically relate to an administrative remedy . . . ." **Howard**, 899 So. 2d at 888. Therefore, the exhaustion doctrine is inapplicable here.

¶39. This Court also has found that three variables influence whether exhaustion of administrative remedies is required: "extent of injury from pursuit of administrative remedies, degree of apparent clarity or doubt about administrative jurisdiction, and involvement of specialized administrative understanding in the question of jurisdiction." **Campbell Sixty-Six Express, Inc. v. J. & G. Express, Inc.**, 244 Miss. 427, 141 So. 2d 720, 726 (1962) (quoting 3 Davis, *Administrative Law Treatise* § 20.10 (1958)).

¶40. Because pursuing any administrative remedy before the MSOGB would serve as a basis for res judicata or collateral estoppel in the circuit court, the Baucums argue that they would suffer irreparable injury from pursuit of administrative remedies."The findings of an administrative agency like the [MSOGB] are prima facie correct and the reviewing court may not substitute its judgment for that of the administrative agency where there is a substantial basis in the evidence for those findings." **Transcon. Gas Pipeline**, 457 So. 2d at 1312 (citing **Barnwell, Inc. v. Sun Oil Co.**, 249 Miss. 398, 410-11, 162 So. 2d 635, 640 (1964)). Thus, we find probative that the MSOGB's determination on the issue of whether the well site is polluted would affect the Baucums' property-damage claims and personal-injury claims.

19

Proceedings before the MSOGB would be preclusive on key issues in the Baucums' claims before the trial court. The Baucums also would not be able to conduct the discovery available in civil court proceedings before proceeding before the MSOGB.

¶41. In addition, because the MSOGB can provide no adequate remedy for the Baucums' common-law claims and because the Baucums have not voluntarily submitted to the jurisdiction of the MSOGB, the degree of doubt about administrative jurisdiction is high in this case. Lastly, the Baucums have omitted the negligence per se claims that required the interpretation or application of MSOGB rules and regulations. Therefore, the involvement of specialized administrative understanding does not require the exhaustion of administrative remedies. A jury could determine the Baucums' property-damage and personal-injury claims.

¶42. Because the Baucums have not voluntarily submitted to the MSOGB jurisdiction and because the MSOGB can provide no adequate remedy for the Baucums' property-damage and personal-injury claims, we affirm the decision of the trial court to the lift stay regarding the Baucums' personal-injury claims. Further, we find that the trial court erred by declining to lift the stay as to the Baucums' property-damage claims.

## CONCLUSION

¶43. Because no adequate administrative remedy exists both for the Baucums' property damage and personal-injury claims, the Baucums are not required to exhaust their administrative remedies before resorting to the courts for resolution. Therefore, we affirm the circuit court's decision to lift the stay on the Baucums' personal-injury claims. However, we find that the trial court erred by failing to lift the stay on the Baucums' property-damage

20

claims; therefore we reverse and remand the trial court's decision on that issue.

¶44.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

    **RANDOLPH, C.J., KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**