# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-IA-00315-SCT

*TIGER PRODUCTION COMPANY, LLC, CCORE
ENERGY MANAGEMENT COMPANY, LLC,
ROBERT MARSH NIPPES AND HARRY
WALTERS*

*v.*

*JOHN WEBB PACE, JEANETTE PACE AND
JOHN GREGORY PACE*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/08/2021 |
| TRIAL JUDGE: | HON. ROBERT THOMAS BAILEY |
| TRIAL COURT ATTORNEYS: | GEORGE THOMAS DICKERSON |
| | KATHRYN D. CLAY |
| | C. DALE SHEARER |
| | IAN AUSTIN |
| COURT FROM WHICH APPEALED: | WAYNE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | C. DALE SHEARER |
| | IAN AUSTIN |
| ATTORNEYS FOR APPELLEES: | GEORGE THOMAS DICKERSON |
| | KATHRYN D. CLAY |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED AND REMANDED - 10/20/2022 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND ISHEE, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    On July 2, 2018, John Webb Pace, Jeannette Pace, and John Gregory Pace (the Paces)

filed a complaint against Tiger Production Company, LLC, CCore Energy Management

Company, LLC, Robert Marsh Nippes, and Harry Walters (collectively, "Tiger Production")

in the Circuit Court of Wayne County, Mississippi. Each defendant filed a motion to dismiss the Paces' claims for failure to exhaust their administrative remedies before the Mississippi Oil and Gas Board (MSOGB). After hearing oral arguments, the circuit court denied the motions to dismiss, determining that all of the Paces' claims are based in common law and cannot be remedied by the MSOGB. Tiger Production timely sought interlocutory appeal, which was granted by this Court on May 5, 2021.

¶2.     This Court finds that the circuit court was correct. We therefore affirm the circuit court's judgment and remand the case to the circuit court for further proceedings.

**FACTS**

¶3.     The Paces are the owners of 103 acres of land in Wayne County. It is not disputed that they acquired the property in 1994.[1] Tiger Production is the designated operator by the MSOGB for several oil wells and saltwater disposal wells in Wayne County.[2]

¶4.     On July 2, 2018, the Paces filed suit in the Circuit Court of Wayne County against Tiger Production seeking compensatory and punitive damages. In their complaint, the Paces sought relief on four grounds: trespass, negligence and/or wantonness, nuisance, and

---

[1]In their complaint, the Paces averred that they had attached two special warranty deeds pertaining to the 103 acres. But the Paces are mistaken; no deeds were attached. Additionally, Tiger Production asserted in its answer that the Paces' property was subject to a mineral lease. But, similarly, it was not attached to any of Tiger Production's pleadings. Neither the deeds nor the lease were admitted into evidence. Thus, none of those documents is before this Court. Furthermore, it is unclear whether the Paces had acquired any mineral rights, or surface only.

[2]CCore Energy Management Company, LLC, is a company related to Tiger Production, but it is not an operator of the oil and disposal wells. Robert Nippes is the manager of Tiger Production, and Harry Walters is an employee of Tiger Production.

2

damages. The Paces' trespass claim is based on Tiger Production's laying of a saltwater disposal line across their property. The complaint alleged that Tiger Production constructed a saltwater line across the Paces' property, without their consent, in order to connect the line to the Long Leaf Disposal Well. The Paces alleged that Tiger Production showed a "willful, wanton, reckless, grossly negligent and/or intentional disregard for the rights of [the Paces]" by Tiger Production's use of part of the Paces' land that was crossed by the saltwater disposal line.

¶5. The Paces' claim for negligence and/or wantonness was based on a saltwater or chemical leak that occurred in their pasture. This saltwater leak resulted in the poisoning and, in some instances, death of some of the Paces' cattle. The Paces alleged also that crude oil was discovered above ground in their pasture, leading to more severe health problems for their livestock.

¶6. The Paces' damages claim was based on a loss of income they say resulted from Tiger Production's construction of a waste reserve pit on their property. They alleged that the construction of this pit caused interruption of their cattle business and prevented their being able to provide a clean water source for their herd. The reserve pit was built in conjunction with the development of an oil well, and this pit has remained in place since the time the well was drilled. The Paces claimed that all of these actions by Tiger Production constituted direct and continuing nuisance.

¶7. On August 9, 2018, Tiger Production filed individual motions to dismiss the Paces' claims for their having failed to exhaust the administrative remedies available to them from

3

the MSOGB. The trial judge heard the motions on February 13, 2020, and denied them by memorandum and order on March 5, 2021. In denying Tiger Production's motions to dismiss, the circuit court held that the common law claims do not relate to administrative remedies, and that the MSOGB lacked jurisdiction over the common law claims. Tiger Production timely filed a petition for interlocutory appeal on March 26, 2021, which this Court granted on May 5, 2021.

¶8. Tiger Production relies on ***Chevron U.S.A., Inc. v. Smith***, 844 So. 2d 1145 (Miss. 2002), arguing that the Paces' claims can be remedied either in part or in whole by the MSOGB. Specifically, Tiger Production contends that the Paces' claims arise from "damages to their land from regulated oil and gas exploration and production activities within a regulated oil field, or for violation of permits issued by the [MSOGB]."

¶9. After Tiger Production's petition for interlocutory appeal had been granted, this Court decided ***Petro Harvester Oil & Gas Co., LLC v. Baucum***, 323 So. 3d 1041 (Miss. 2021), which held that plaintiffs are not always required to exhaust their administrative remedies before seeking relief in the trial court. The Paces argue that the Court's decision in ***Baucum*** supports the order of the trial court. They aver that the ***Baucum*** holding "confirms that common law claims for damages are properly the subject of [c]ircuit [c]ourt jurisdiction."

## STANDARD OF REVIEW

¶10. "Jurisdictional issues are reviewed by this Court de novo." ***Jones v. Billy***, 798 So. 2d 1238, 1239 (Miss. 2001) (citing ***Harrison v. Boyd Miss., Inc.***, 700 So. 2d 247, 248 (Miss. 1997)). Additionally, we have held:

4

"The standard of review for a trial court's grant or denial of a motion to dismiss is de novo." **Burch v. Illinois Cent. R.R. Co.**, 136 So. 3d 1063, 1064-65 (¶ 3) (Miss. 2014). "A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint." **Rose v. Tullos**, 994 So. 2d 734, 737 (¶ 11) (Miss. 2008). "When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." **Scaggs v. GPCH-GP, Inc.**, 931 So. 2d 1274, 1275 (¶ 6) (Miss. 2006).

**Weill v. Bailey**, 227 So. 3d 931, 934-35 (Miss. 2017).

## DISCUSSION

**The circuit court correctly held that the Paces were not required to exhaust their administrative remedies regarding their claims.**

¶11.    "Where an administrative agency regulates certain activity, an aggrieved party must first seek relief from the administrative agency before seeking relief from the trial courts." **Chevron**, 844 So. 2d at 1148 (citing **State v. Beebe**, 687 So. 2d 702, 704 (Miss. 1996)); *see also* **Baucum**, 323 So. 3d at 1046. But "where no adequate administrative remedy is provided, the exhaustion doctrine is not applicable." **Baucum**, 323 So. 3d at 1046 (internal quotation mark omitted) (quoting **Donald v. Amoco Prod. Co.**, 735 So. 2d 161, 176 (Miss. 1999)).

¶12.    Tiger Production argues that, based on **Chevron**, the Paces were required to exhaust their administrative remedies before seeking relief in the trial court because the asserted claims come from "damages to [the Paces'] land from regulated oil and gas exploration and production activities within a regulated oil field, or for violation of permits issued by the [MSOGB]." The Paces assert that their claims are based in common law, and, because of that, they were not required to exhaust their administrative remedies prior to filing suit in the

5

circuit court. The Paces cite this Court's recent case, *Baucum*, 323 So. 3d at 1048, for support.

¶13.    In 2002, this Court decided *Chevron*, which was an oil field contamination case. *Chevron*, 844 So. 2d at 1146. There, a jury awarded $2,349,275 to the plaintiffs as damages for the pollution and contamination of their property from oil and gas exploration and production. *Id.* at 1146. This Court reversed the award of damages, holding that oil field surface owners seeking the cleanup and remediation of their property were required to exhaust their administrative remedies before the MSOGB prior to seeking relief in the courts. *Id.* at 1149. The Court determined that the MSOGB had authority because "pollution clean up operations have been deemed the responsibility of the [MSOGB]." *Id.* at 1148. The Court explained that no court of law can require a party "to expend the award on decontaminating the property" and that "[t]he citizens of this state are better served by having an expert regulatory agency enforce the environmental statutes[.]" *Id.* Therefore, "in cases where private plaintiffs are seeking clean up of oil production byproducts, the [MSOGB] 'remedy is adequate and should . . . [be] exhausted prior to filing a private suit.'" *Id.* (second and third alterations in original) (quoting *Donald*, 735 So. 2d at 177). As a result, the Court "reverse[d] the trial court's judgment, and we render[ed] judgment . . . dismissing the Smith's complaint and [the] action without prejudice for failure to exhaust administrative remedies." *Id.* at 1146.

¶14.    In August 2021, this Court decided *Baucum*. *Baucum*, 323 So. 3d at 1041. Thus, that case became an intervening decision during the pendency of this appeal. The plaintiffs in

***Baucum*** owned land in Jones County that joined land owned and controlled by an oil and gas company. ***Id.*** at 1042. The plaintiffs asserted claims for "trespass, public and private nuisance, and negligence," alleging that the defendant had disposed of oil and gas production waste on their land illegally. ***Id.*** at 1042. Later, the plaintiffs amended their complaint to include a personal injury claim in which they alleged that the defendant's illegal dumping of oil production waste was the cause of a plaintiff's cancer. ***Id.*** at 1044. The Court recognized that while Mississippi statutory law gives the MSOGB "jurisdiction over the noncommercial disposal of oil-field waste[,]" "that is not to say that the MSOGB has unlimited jurisdiction over all issues involving oil-field waste." ***Id.*** at 1048. The Court found that "[b]ecause no adequate administrative remedy exists both for the Baucums' property damage and personal-injury claims, the Baucums are not required to exhaust their administrative remedies before resorting to the courts for resolution." ***Id.*** at 1051. The Court recognized also that because there was no nexus between the Baucums and the MSOGB, the exhaustion doctrine should not apply. ***Id.*** at 1048, 1051.

¶15.    Under Mississippi Code Section 53-1-17(1), the MSOGB "shall have jurisdiction and authority over all persons and property necessary to enforce effectively the provisions of this chapter and all other laws relating to the conservation of oil and gas." Miss. Code Ann. § 53-1-17(1) (Rev. 2016). Additionally, the MSOGB has the duty to make rules and regulations regarding the drilling and operation of wells and to prevent pollution by oil, gas, or saltwater. *See* Miss. Code Ann. § 53-1-17(3)(a), (3)(k) (Rev. 2016); Miss. Code Ann. § 53-3-5(a) (Rev. 2016). As we said in ***Baucum***, "the MSOGB has jurisdiction over the noncommercial

7

disposal of oil-field waste. . . . [T]hat is not to say that the MSOGB has unlimited jurisdiction over all issues involving oil-field waste." **Baucum**, 323 So. 3d at 1048. Although the Paces' claims are causally related to activities that are regulated by the MSOGB, that does not give the MSOGB unlimited jurisdiction over the claims. **Id.**

¶16.    The Paces' claims are not based on any violation of the MSOGB rules or regulations because their claims are based on injury to their property rather than on the operations of oil and gas wells. Specifically, the Paces' claims seek compensatory and punitive damages not from Tiger Production's oil and gas operations and the saltwater spill itself but for the loss of profits and the expenses the Paces have incurred from the poisoning of their cattle. As the Paces' lawyer argued before the trial judge, "we're complaining simply of cows—some cows died, calves died because of a chemical leak and saltwater leak on the man's property. That has nothing to do with regulatory." As for the Paces' trespass claim, it also is not based on a rule or regulation that would give jurisdiction to the MSOGB. Rather, it is based on a physical injury to the Paces' property and resulting damages, thus interfering with the Paces' use of their land.

¶17.    The MSOGB has the authority to assess penalties for violations of its rules and regulations, such as the power to obtain an injunction, Miss. Code Ann. § 53-1-43(a) (Rev. 2016), and to assess fines up to $10,000. Miss. Code Ann. § 53-1-47(a)(i) (Rev. 2016). "But the MSOGB is limited to those remedies." **Baucum**, 323 So. 3d at 1050. Here, the MSOGB cannot provide an adequate remedy for the Paces' claims. While the MSOGB can assess fines/penalties or enjoin violations of its rules and regulations, those types of remedies cannot

8

compensate the Paces for the loss of their cattle and the income from their business; such assessments are paid to the state, not to private parties. *See Town of Bolton v. Chevron Oil Co.*, 919 So. 2d 1101, 1111 (Miss. Ct. App. 2005) (citing *Howard v. TotalFina E & P USA, Inc.*, 899 So. 2d 882, 888 (Miss. 2005)); *see also* Miss. Code Ann. § 53-1-47(b) (Rev. 2016) ("All such penalties paid or collected shall be paid to the State Treasurer for credit to the Special Oil and Gas Board Fund."). Therefore, the MSOGB remedies are inadequate, and the exhaustion doctrine is inapplicable. *See Baucum*, 323 So. 3d at 1046, 1050.

¶18. Further, we have held that "three variables influence whether exhaustion of administrative remedies is required: 'the extent of injury from pursuit of administrative remedies, degree of apparent clarity or doubt about administrative jurisdiction, and involvement of specialized administrative understanding in the question of jurisdiction.'" *Baucum*, 323 So. 3d at 1050 (quoting *Campbell Sixty-Six Express, Inc. v. J. & G. Express, Inc.*, 244 Miss. 427, 141 So. 2d 720, 726 (1962)).

¶19. First, "[t]he findings of an administrative agency like the [MSOGB] are prima facie correct and the reviewing court may not substitute its judgment for that of the administrative agency where there is a substantial basis in the evidence for those findings." *Id.* at 1051 (second alteration in original) (internal quotation marks omitted) (quoting *Transcon. Gas Pipeline Corp. v. State Oil & Gas Bd. of Miss.*, 457 So. 2d 1298, 1312 (Miss. 1984), *rev'd on other grounds by Transcon. Gas Pipe Line Corp. v. State Oil & Gas Bd. of Miss.*, 474 U.S. 409, 106 S. Ct. 709, 88 L. Ed. 2d 732 (1986)). If the Paces were forced to exhaust their administrative remedies before the MSOGB, any subsequent civil action brought by the

9

Paces of these claims could be subject to the defenses of *res judicata* and collateral estoppel. *Id.* at 1050-51. The preclusive effect of such defenses has the potential to cause irreparable harm to the Paces' right to pursue civil action.

¶20. Second, there is considerable doubt of whether MSOGB acquired jurisdiction in this case, specifically in regard to the Paces' trespass claim. Throughout the motion hearing, Tiger Production asserted that the trespass claim was based on the crossing of unit lines, which are established by the MSOGB, and that the Paces' property was subject to an existing oil and gas unit. Additionally, Tiger Production asserted as an affirmative defense in its answer that the Paces' claims were barred because their property was subject to a mineral lease. But Tiger Production never produced any documentation that there was an existing unit and/or mineral lease that affected the Paces' property, despite mentioning the unit and/or mineral lease in its answer and during the motions hearing. Without any documentation, no nexus was established between the Paces and the MSOGB. In *Baucum*, this Court found that no nexus existed and that the Baucums did not voluntarily consent to the jurisdiction of the MSOGB because:

> the Baucums have not entered into a mineral lease or surface lease, have not consented to or become a party to a unit agreement, have not allowed oil-and-gas exploration or production on their property, and have not taken any action that would place them on actual or constructive notice that they were consenting to MSOGB jurisdiction.

*Baucum*, 323 So. 3d at 1050. Here, Tiger Production's lawyer acknowledged at the hearing that "[Tiger Production] was able to enter agreements with every other landowner in the area but the Paces. . . . The Paces haven't because they—we couldn't make a deal with them."

This supports that the Paces' claims are based in common law because the Paces have not availed themselves of the jurisdiction of the MSOGB. Additionally, no adequate remedy can be provided by the MSOGB for the Paces' loss of cattle and the loss of income by the Paces' business. Because there is no adequate remedy and the lack of documentation establishing a nexus between the Paces and the MSOGB, there is a high degree of doubt about MSOGB's jurisdiction in this case. *See **Baucum***, 323 So. 3d at 1051.

¶21. Third, the Paces' claims themselves do not require any specialized understanding, interpretation, or application of an administrative agency's rules or regulations. The question presented is not whether Tiger Production violated any MSOGB rules or regulations. The questions raised by these claims are whether Tiger Production's actions on the Paces' property proximately caused the poisoning of their cattle, the loss of profits from the interruption in the Paces' cattle business, and whether these actions constitute a nuisance, all of which can be determined by a jury. *See **Baucum***, 323 So. 3d at 1051. Regarding the trespass claim, Tiger Production provided no documentation regarding the existence of a unit or a mineral lease. If proof of either had been adduced, there could have been a need for the MSOGB's interpretation or application of MSOGB rules or regulations. *See **Baucum***, 323 So. 3d at 1051. But the case before us requires no specialized knowledge regarding any of the Paces' claims.

¶22. Here, the three variables support the trial court's conclusion that the Paces were not required to exhaust administrative remedies before bringing their claims in the trial court. The exhaustion doctrine does not apply to the Paces' claims because the MSOGB cannot

supply the Paces an adequate remedy for their alleged harms. *Id.* at 1051.

¶23. We find that the trial court correctly determined that the Paces were not required to exhaust their administrative remedies with the MSOGB.

## CONCLUSION

¶24. The circuit court correctly determined that the MSOGB lacked jurisdiction over and cannot provide an adequate remedy for the Paces' purely common law claims. Therefore, we affirm the circuit court's judgment and remand the case to the circuit court for further proceedings.

¶25. **AFFIRMED AND REMANDED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. BEAM, J., NOT PARTICIPATING.**